691 So.2d 844 (1997)
Luna McBryde FINCHER, individually and as natural tutrix of her son, Jack Allison McBryde, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF HEALTH & HOSPITALS, et al., Defendants-Appellants.
No. 29640-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1997.
Rehearing Denied May 1, 1997.
Richard P. Ieyoub, Attorney General, Jerald L. Perlman, Assistant Attorney General, for Defendants-Appellants.
*845 William D. Hall, Shreveport, for Plaintiff-Appellee.
Before NORRIS, HIGHTOWER and CARAWAY, JJ.
NORRIS, Judge.
The issue in this appeal is whether the plaintiff's claim, which is framed as a tort suit, is actually a medical malpractice action which must first be heard by a medical review panel ("MRP"). The District Court ruled that it was not, and dismissed the defendant's exception of prematurity. The defendant now appeals. For the reasons expressed, we reverse the judgment, sustain the exception of prematurity, and dismiss the plaintiff's suit without prejudice.

Procedural background
According to the petition, Jack McBryde is a 47-year old retarded person with epilepsy and substantial functional limitations. Since 1982 he continuously resided at the Northwest Louisiana Developmental Center in Bossier City for "residential living and for education and training commensurate with his physical and mental disabilities." Because he often fell, he was fitted with a protective helmet; the staff of the Center recommended one-to-one supervision whenever he was transported, and one-to-six supervision at all other times. On September 11, 1993 he slipped and fell on the premises, seriously injuring his neck and rendering him a quadriplegic. Jack's mother and tutrix, Mrs. Fincher, alleged that at the time of the fall, Jack was not wearing his protective helmet and was unsupervised.
Mrs. Fincher filed the instant suit against the State Department of Health and Hospitals, which owns and operates the Center, and against the Center itself (herein, "the State"). She alleged the State was negligent, inter alia, in failing to exercise reasonable care towards Jack as his known condition may require; in failing to use ordinary care to safeguard him from dangers due to his mental or physical incapacity; in failing to supervise him adequately to assure he would not fall, and that he would wear his helmet at all times; in failing to provide adequate personnel to supervise the residents of the Center, including Jack; and in failing to transport him immediately to a hospital for medical care after the fall.
The State filed an exception of prematurity, urging that the claim fell under the Malpractice Liability for State Services Act ("MLSSA"), La.R.S. 40:1299.39 et seq., and thus had to be presented to an MRP under R.S. 40:1299.39.1 B(1)(a)(i). In support, the State filed an affidavit of the Center's administrator, Mr. Mullinix. This asserted that the Center is staffed by medical personnel, including nurses, who regularly administer medicine and chart patients' progress; that it contracts with physicians to administer medical care, and 61% of its budget was allocated to medical and medical-related needs; and that the Center's services for chronic-care patients are similar to those provided for elderly patients in nursing homes.
The court heard argument on the exception in September 1996. Both sides also filed copies of the Center's accident report. This showed that on the evening of the accident, a staff LPN examined him, recorded his complaints, tested his range of motion, and instructed the resident training specialist to "monitor for any problems and report to nurse."
Writing that "this is not a medical malpractice case," the court overruled the exception. This appeal followed.

Applicable law
At the outset we note that a judgment rejecting a dilatory exception of prematurity is interlocutory and unappealable in the absence of irreparable injury. La.C.C.P. art. 2083. However, a judgment requiring a health care provider to forgo the benefit of the MRP is considered appealable in that MRP proceedings cannot be adequately replicated after reversal on appeal. Cashio v. Baton Rouge Gen'l Hosp., 378 So.2d 182 (La.App. 1st Cir.1979); Head v. Erath Gen'l Hosp., 458 So.2d 579 (La.App. 3d Cir.1984), writ denied 462 So.2d 650 (1985); Prisk v. Palazzo, 95-1475 (La.App. 4th Cir. 1/19/96), 668 So.2d 415, writ denied 96-0437 (La. 4/8/96), 671 So.2d 335. The instant judgment is therefore appealable.
*846 By its exception the State urges it is entitled to the procedure established by MLSSA, R.S. 40:1299.39 et seq., including review of the claim by an MRP. This statute is separate from the private Medical Malpractice Act ("MMA"), R.S. 40:1299.41 et seq.[1]Kelty v. Brumfield, 93-1142 (La. 2/25/94), 633 So.2d 1210. MLSSA defines a State health care provider, in part, as follows:
"State health care provider" * * * means: The state or any of its departments, offices, agencies, boards, commissions, institutions, universities, facilities, hospitals, clinics, laboratories, health care units, ambulances, ambulance services, university health centers, and other state entities which may provide any kind of health care whatsoever, and the officers, officials, and employees thereof when acting within the course and scope of their duties in providing health care in connection with such state entity[.]
R.S. 40:1299.39 A(1)(a)(i) (emphasis added).
The critical concept of health care is defined as follows:
"Health care" means any act or treatment which was performed or furnished or which should have been performed or furnished by any person covered by this Part, to, or on behalf of, a patient during the medical care, treatment or confinement of the patient.
R.S. 40:1299.39 A(6) (emphasis added).
The statute further defines a "patient" as a natural person who receives, or should have received, health care from a State health care provider. R.S. 40:1299.39 A(3). Finally, "malpractice" is defined as the failure to exercise the reasonable standard of care, as set forth in R.S. 9:2794,[2] in the provision of health care, when such failure proximately causes injury to a patient. R.S. 40:1299.39 A(4) and B(1).
MLSSA derogates from the rights of injured parties and must be strictly construed against finding coverage. Kelty v. Brumfield, supra; Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415 (MMA case). A State health care provider bears the burden of proving it is entitled to the benefits of MLSSA. In re Cooper, 594 So.2d 1082 (La.App. 4th Cir.1992).

Discussion
The State argues initially that the Northwest Louisiana Developmental Center qualifies as a State health care provider. The State shows that the Center is a staterun facility for mentally retarded and developmentally disabled persons, and is part of the Department of Health and Hospitals. R.S. 28:22.8; R.S. 36:259 C(21). The Center is therefore statutorily obligated to provide "mental retardation and developmental disabilities services," which include diagnosis and evaluation, health services, therapies and habilitation services. R.S. 28:381(29). The affidavit of Mr. Mullinix shows that the Center actually performs such services, and over half of its budget is allocated to "medical and medical-related needs." The accident report shows that an LPN did in fact examine and evaluate Jack after his fall.[3] We find that the Center's statutory duties, and the documents on file, satisfy MLSSA's definition of a State health care provider in that it provided "any kind of health care whatsoever." The same statutes and documents show that Jack was a natural person who, during his permanent residence or confinement at the Center, received or should have received health care from the Center; he is therefore a "patient" for purposes of MLSSA.
The State also argues that recent jurisprudence under the MMA (which is not at issue in the case but, according to the State, is similar), non-traditional items of patient care may be found to constitute health *847 care. See, e.g., Prisk v. Palazzo, supra; Wyble v. St. Luke Gen'l Hosp., 415 So.2d 622 (La.App. 3d Cir.1982).
We have closely reviewed the allegations of Mrs. Fincher's petition. In essence they charge that personnel at the Center failed to follow certain medical and therapeutic directives that were formulated by doctors and therapists to protect Jack from falling, or at least to minimize the risk of a fall, and then failed to recognize the gravity of his injuries and secure appropriate emergency medical attention. In our view, the petition asserts a failure to perform "any act" which should have been performed by a State health care provider during the confinement of the patient. R.S. 40:1299.39 A(6). In other words, it asserts a duty to perform health care. The failure to meet this standard is, by definition, malpractice. R.S. 40:1299.39 A(4). The substance of the petition is therefore malpractice, and the claim must first be submitted to an MRP. R.S. 40:1299.39.1 B(1)(a)(i).
The State has also shown that Mrs. Fincher raised at least one obvious allegation of malpractice. The claim that a health care provider failed to diagnose and treat a condition is a matter for the MRP and normally an act of malpractice. See, e.g., Russo v. Bratton, 94-2634 (La.App. 4th Cir. 6/29/95), 657 So.2d 777, writ denied 95-1964 (La. 11/13/95), 662 So.2d 474. The contention that an LPN examined Jack immediately after the accident but failed to discover an injury or to provide emergency treatment is obviously a matter for an MRP.
In support of the judgment, Mrs. Fincher argues that the cases cited by the State to show the expanded scope of health care all arise under the MMA and thus do not control the instant case. She argues that a broad interpretation is permissible under the MMA because it defines malpractice in broad terms:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
R.S. 40:1299.41 A(8).
However, as defined by MLSSA, "malpractice" includes the failure to exercise the reasonable standard of care in the provision of health care, and "health care" is defined, exactly as in the MMA, to include "any act * * * which was performed or furnished or which should have been performed or furnished * * * during the * * * confinement of the patient."[4] Regardless of the provisions of the MMA, we are constrained to find that Mrs. Fincher's petition alleges a failure to render health care as defined in MLSSA.
Mrs. Fincher next argues than even under the MMA, many injuries sustained by patients while in the hospital are found not to be malpractice. She specifically cites Head v. Erath Gen'l Hosp., supra, and Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992), as fall or slip-and-fall cases in which the MMA did not apply.
In Sewell, supra, a patient who was recovering from cervical surgery was injured when his hospital bed collapsed. He filed suit against the hospital alleging strict liability for a defective thing under the defendant's custody, in that the bed was unreasonably dangerous in normal use. The Supreme Court held that the strict liability action, with no allegation of negligence on the part of the hospital, could not be covered by the MMA. The court further stated, in a footnote:
[A] health care provider's liability may arguably be included under the Act when a patient is injured in a fall from the hospital bed because the provider's employee was negligent under the particular circumstances in failing to raise the sides, but the provider's liability may not be included under the Act when the patient is injured in a fall because the same bed collapsed *848 from metallurgical defect, unless the provider caused the defect or knew or should have known of the defect and neglected to repair it.

Id., at fn. 6.
The instant case is one which the footnote appears to foresee, in which the health care provider negligently fails to take action necessary to prevent the patient from falling.
In Head v. Erath Gen'l Hosp., supra, workmen repairing a hospital bathroom left a slippery fluid on the floor. The plaintiff, a patient in the hospital, went to use the bathroom but slipped in the fluid. Rejecting the hospital's defense that the claim was malpractice, the court of appeal stated:
None of the factual averments of plaintiff's petition disclose any substantial relationship between plaintiff's fall and any acts which defendant hospital should have performed on behalf of plaintiff as a patient in its facility. There is no allegation that plaintiff's accident was caused by or is in any way related to his medical treatment.
458 So.2d at 581 (emphasis added).
By contrast, all of Mrs. Fincher's allegations charge the Center with specific acts of negligence that are substantially related to the treatment that Jack was supposed to receive as a patient and resident of the Center. In short, the instant case is one that comes under MLSSA.
Next Mrs. Fincher argues that various other cases involving claims against State developmental centers have been decided simply as tort matters without reference to MMA or MLSSA. See, e.g., Tolbert v. State, 370 So.2d 166 (La.App.App.3d Cir.), writ ref'd 371 So.2d 1342 (1979); Daniels v. Conn, 382 So.2d 945 (La.1980); Shackleford v. State, 534 So.2d 38 (La.App. 3d Cir.1988), writ denied 536 So.2d 1218 (1989); Jones v. State, 95-1130 (La.App. 3d Cir. 3/27/96), 671 So.2d 1074, writ denied 96-1040 (La. 5/31/96), 674 So.2d 263. Admittedly some of these cases bear a resemblance to the instant case and in all of them the State apparently did not assert MLSSA.[5] However, we decline to interpret these opinions' silence on the matter as a holding or rule that MLSSA does not apply. In the instant case, the State has specifically pled the statute and both sides have argued it ably. We find that MLSSA applies to this case.
We recognize the rule of strict construction that applies to MLSSA. Kelty v. Brumfield, supra. However, even a strict construction of statutory language such as "failure to exercise the reasonable standard of care" in providing "any kind of health care whatsoever" "during the medical care, treatment or confinement of the patient" mandates a finding that the instant claim must proceed under MLSSA.

Conclusion
For the reasons expressed, the judgment is reversed, the State's exception of prematurity is granted, and the plaintiff's suit is dismissed without prejudice. Costs are assessed to the plaintiff, Mrs. Luna Ruth Fincher.
JUDGMENT REVERSED; EXCEPTION OF PREMATURITY GRANTED; SUIT DISMISSED WITHOUT PREJUDICE.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and NORRIS, HIGHTOWER, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] The differences between the MMA, which has generated most of the malpractice jurisprudence, and MLSSA will be noted where applicable.
[2] R.S. 9:2794 A holds general practitioners to the degree of knowledge or skill possessed or the degree of care ordinarily exercised by general practitioners "in a similar community or locale and under similar circumstances"; specialists are held to the degree of care ordinarily practiced "within the involved medical specialty."
[3] In a memorandum to the District Court, counsel for Mrs. Fincher conceded that Jack "did receive some `health care' from medical professionals on staff[.]'" R. p. 61.
[4] The MMA's definition of "health care" is found at R.S. 40:1299.41 A(9).
[5] Daniels v. Conn and Jones v. State involved mental patients who, from lack of supervision, wandered off the Developmental Center's premises and were killed or disappeared. Tolbert v. State and Shackleford v. State actually involve intentional torts committed by other patients.