888 So.2d 782 (2004)
Vayneary WILLIAMSON
v.
HOSPITAL SERVICE DISTRICT NO. 1 OF JEFFERSON d/b/a West Jefferson Medical Center.
No. 2004-C-0451.
Supreme Court of Louisiana.
December 1, 2004.
*783 Tarcza & Associates, LLC, Robert Emmet Tarcza, Michael Anthony Triay, New Orleans, for applicant.
Breazeale, Sachse & Wilson, LLP, Michael Charles Luquet, Peter J. Butler, Peter J. Butler, Jr., Ralph T. Rabalais, New Orleans, for respondent.
Lewis Kullman & Sterbcow, Lawrence S. Kullman, New Orleans, for amicus curiae Louisiana Trial Lawyers Association.
CALOGERO, Chief Justice.[*]
Not every unintentional tort committed by a qualified health care provider falls within the Medical Malpractice Act, only those "arising from medical malpractice." La.Rev.Stat. 40:1299.41(l). Plaintiff alleges in her petition, as supplemented and amended by her second supplemental and amending petition, that she was being pushed in a wheelchair by an employee of the defendant, West Jefferson Medical Center, when the wheel fell off causing her to fall and suffer injury. She further alleges that the defendant and its employee negligently failed to repair the wheelchair *784 and negligently failed to insure that the wheelchair was in proper working condition prior to returning it to service.
Finding that the plaintiff should have presented her claim to a medical review panel, the district court sustained the defendant's exception of prematurity, and the court of appeal affirmed that ruling. Williamson v. Hospital Service Dist. No. 1 of Jefferson Parish, 03-1066 (La.App. 5 Cir. 1/27/04), 866 So.2d 962. We granted the writ to consider the correctness of the appeal court's analysis in which it employed a "broad interpretation" of the Act's definition of medical malpractice before determining whether the plaintiff's claim fell within the purview of the Medical Malpractice Act. Williamson v. Hospital Service Dist. No. 1 of Jefferson Parish, 04-0451 (La.4/8/04), 870 So.2d 261. For the reasons assigned below, we find the court of appeal erred in not strictly construing coverage of the Medical Malpractice Act. See Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992). Instead, we find that the plaintiff's petition, as supplemented and amended, alleges a claim of ordinary negligence that does not fall within the provisions of the Medical Malpractice Act. Accordingly, we reverse the court of appeal, as well as the ruling of the district court, and remand the matter to the district court for further proceedings.

FACTS AND PROCEDURAL HISTORY
The facts of the case at this interlocutory stage of the proceedings are taken from the plaintiff's original petition as amended by her second supplemental and amending petition. In her petition as supplemented and amended, the plaintiff alleges that on July 31, 2000, after she was discharged from West Jefferson Medical Center, and as she was being pushed in a wheelchair by an employee of the defendant, a wheel on the wheelchair fell off causing her to be thrown to the ground resulting in injury. She alleges that, according to the defendant's risk management officer, the wheel of the wheelchair had been repaired by the defendant's personnel several days before the incident. She alleges that her injuries were caused by the fault of the defendant or its personnel in negligently failing to repair the wheelchair, negligently failing to supervise the repair of the wheelchair, and negligently failing to insure the wheelchair was in proper working condition prior to returning the wheelchair to service. She further pleaded the doctrine of res ipsa loquitur.
The defendant filed an exception of prematurity in response to the plaintiff's original petition asserting her claim was a medical malpractice claim that should have been, but was not, presented first to a medical review panel, as required by the Medical Malpractice Act.[1] One day prior *785 to the hearing on the defendant's exception of prematurity, the plaintiff filed the second supplemental and amending petition. At the hearing on the defendant's exception of prematurity, the plaintiff argued her petition as that supplemented and amended by the second supplemental and amending petition, rather than argue the allegations of her original petition. The defendant referred primarily to the original allegations, rather than the supplemental and amending allegations. The district court apparently granted the defendant's exception of prematurity based largely on the original petition, but it nonetheless granted the plaintiff leave to supplement and amend that petition.[2]
The court of appeal considered both the original petition and the second supplemental and amending petition, finding that the plaintiff was "alleging WJMC should have known of the defect in the wheelchair and that WJMC's negligence caused the wheelchair to fail." The court of appeal applied the factors set forth in Coleman v. Deno, 01-1517 (La. 1/25/02), 813 So.2d 303, and affirmed the ruling of the district court granting the defendant's exception of prematurity. We granted writs to review the correctness of the appellate court's judgment and reasoning therefor.

DISCUSSION
The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116; see also Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 21-3(f) (1996). An action is premature when it is brought before the right to enforce it has accrued. La.Code. Civ. Proc. art. 423. Under the Medical Malpractice Act, a medical malpractice claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La.Rev.Stat. 40:1299.47 A. The burden of proving prematurity is on the exceptor, in this case the defendant health care provider; therefore, the defendant must show that it is entitled to a medical review panel. Hidalgo v. Wilson Certified Exp. Inc., 94-1322 (La.App. 1 Cir. 5/14/96), 676 So.2d 114, 117; Bennett v. Krupkin, 00-0023 (La.App. 1 Cir. 3/28/02); 814 So.2d 681, 685-86. Accordingly, the question before the court is whether the plaintiff's claim is one of medical malpractice.
As we have observed on numerous occasions, the legislature enacted the Medical Malpractice Act in 1975 in response to a "perceived medical malpractice insurance `crisis.'" Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415, 419; see also Butler v. Flint Goodrich Hosp., 607 So.2d 517, 521 (La.1992); Galloway v. Baton Rouge Gen. Hosp., 602 So.2d 1003, 1005 (La.1992); Everett v. Goldman, 359 So.2d 1256, 1261 (La.1978). The legislature intended the Act to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. Hutchinson v. Patel, 637 So.2d at 419. We have recognized that, to achieve those goals, the Act gives qualified health care providers two substantial advantages in actions against them *786 for malpractice, namely, a limit on the amount of damages and the requirement that the claim first be reviewed by a medical review panel before commencing suit in a court of law. Id.; see also La.Rev.Stat. 40:1299.42(B); La.Rev.Stat. 40:1299.47.
This court has, without exception, emphasized that the MMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," La.Rev.Stat. 40:1299.41(I), and that all other tort liability on the part of the qualified health care provider is governed by general tort law. Coleman v. Deno, p. 15, 813 So.2d at 315; Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116; Hutchinson v. Patel, 637 So.2d at 419; Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992). In Sewell, we explained:
The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.
600 So.2d at 578.
The Act defines "malpractice" as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
La.Rev.Stat. 40:1299.41 A(8). The Act further defines "tort" and "health care" as follows:
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
"Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
La.Rev.Stat. 40:1299.41 A(7) and (9).
Cognizant of the principles espoused above, in Coleman v. Deno we set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA:
(1) whether the particular wrong is `treatment related' or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
(3) whether the pertinent act or omission involved assessment of the patient's condition,

*787 (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.
Coleman v. Deno, 01-1517, p. 17, 813 So.2d at 315-16 (citing Holly P. Rockwell, Annotation, What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice, 89 A.L.R.4th 887 (1991)).
In the instant case, the lower courts considered the plaintiff's original allegations, see Note 1, supra, and found that they in part asserted a claim that fell within the provisions of the Medical Malpractice Act, and the defendant directs most of its argument in this court to the original petition allegations. We do not necessarily disagree with the lower courts' findings in regard to the original unamended petition, because the original allegations may be reasonably construed to assert a claim of negligence in the "handling of a patient, including loading and unloading of a patient," because the original petition alleged negligence on the part of the defendant or its employee in the transportation of the plaintiff by wheelchair to the parking lot of the hospital. As we noted in Richard v. Louisiana Extended Care Centers, Inc., 02-0978, p. 12 (La.1/14/03), 835 So.2d 460, 468, an allegation that a patient was negligently allowed to fall from her wheelchair might reasonably come within the definition of malpractice under the MMA because it involves the "handling of a patient, including loading and unloading of a patient." Though plaintiff's counsel acknowledged at oral argument that the original allegations had been abandoned by virtue of the second supplemental and amending petition, counsel nonetheless argued that the allegations of the original petition did not assert a claim of medical malpractice. Whether that is the case or not, we need not decide, because the allegations before this court are those asserted in the petition as supplemented and amended by the second supplemental and amending petition. We believe the court of appeal should have focused its review on the allegations of the plaintiff's petition as supplemented and amended by her second supplemental and amending petition without reference to the allegations contained in the original petition that were substituted or abandoned.
We granted writs, however, to consider what we deemed to be a more fundamental error in the court of appeal's reasoning. Although the court of appeal acknowledged that any ambiguities in the MMA should be strictly construed against coverage because the Act is in derogation of the rights of tort victims, citing Richard, supra, 835 So.2d at 468, and it cited and applied the Coleman v. Deno factors, we believe the appellate court went astray when it reasoned that, though it perceived at first impression that the claim of a patient who is injured due to a wheel coming off of a wheelchair would not fall under the provisions of the MMA, it was "bound by the broad interpretation of the MMA" in the jurisprudence. We find no support in the jurisprudence of this court for such reasoning. An expansive reading of the definition of medical malpractice contained in the MMA runs counter to our previous holdings that coverage of the Medical Malpractice Act should be strictly construed because the limitations of the Medical Malpractice Act on the liability of qualified health care providers is special legislation in derogation of the rights of *788 tort victims. E.g., Sewell, 600 So.2d at 578. The limitations of the MMA apply only in cases of medical malpractice as defined in the Act itself, and any ambiguities therein must be strictly construed against coverage. See Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169("Because the Medical Malpractice Act limits the liability of health care providers in derogation of the general rights of tort victims, any ambiguities in the Act should be strictly construed against coverage."). With that framework in mind, we find that the alleged tort in this case is not sufficiently related to "health care" or "professional services" so as to fall within the provisions of the MMA.
In Sewell v. Doctors's Hospital, the plaintiff underwent surgery and was recuperating in a hospital bed when the hinge on the raising mechanism of the bed broke, causing him to fall downward and strike his head and neck on a bedside table. The plaintiff alleged only that the hospital was strictly liable for providing a bed that was defective and unreasonably dangerous. The defendant filed an exception of prematurity, which the lower court maintained. This court reversed. As noted above, we explained that "coverage of the Act should be strictly construed." Sewell, 600 So.2d at 578. The court found that the legislature had not intended that a health care provider's strict liability for defects in hospital furniture falls within the scope of the MMA limiting liability for malpractice. Focusing on the definition of malpractice set forth in the Act, the court's decision turned on the fact that a defective bed was not one of the injury-causing defective things enumerated in that definition. In other words, the court reasoned that the alleged defect was not a defect in blood, tissue, transplants, drugs, medicines, or a prosthetic device as set forth in the definition of malpractice provided by the Act. Because the plaintiff was not alleging negligence, the court did not consider what the Act means by "the handling of a patient, including loading and unloading of a patient...."
As we made clear in Hutchinson v. Patel, the alleged tort must be "based on health care or professional services which were rendered or should have been rendered by a health care provider to a patient." There, we found that under the circumstances of that case, where the plaintiff was alleging that the psychiatrist treating her ex-husband failed to warn her of his threats of violence to her, the "based on" language was ambiguous. We then resolved that case by determining that the plaintiff was not a "patient" within the meaning of the Act, and therefore the alleged "failure to warn" did not constitute "malpractice."
Reasonably construing the plaintiff's petition as supplemented and amended, we find that the plaintiff alleges an unintentional tort in that the hospital or its employee was negligent in failing to repair the wheelchair and that the hospital or its employee failed to insure that the wheelchair was in proper working condition before returning it to service. However, not every unintentional tort committed by a qualified health care provider falls within the provisions of the MMA. It is only those unintentional torts which constitute malpractice that do so. The question, then, is whether the unintentional tort complained of falls within the definition of malpractice as set forth in the MMA.
As noted above, the defendant focuses on the original allegations of the plaintiff, and argues that the plaintiff has alleged negligence in the health care provider's employee's handling of a patient while she was being transported to her car after having received medical treatment, which *789 the defendant argues would be malpractice under the definition thereof in the Act. For the reasons set forth above, we believe the defendant's reliance solely on the original petition is misplaced.
The defendant also argues that a footnote in Sewell controls the instant case, because the plaintiff, in the defendant's view, is alleging that the defendant's negligence is what resulted in the defective wheelchair. We disagree that dictum found in Sewell is relevant to the resolution of this case. In a footnote, the Sewell court ventured that a health care provider's liability "may arguably be included under the Act when a patient injured in a fall from the hospital bed because the provider's employee was negligent under the particular circumstances in failing to raise the sides, but the provider's liability may not be included under the Act when the patient is injured in a fall because the same bed collapsed from a metallurgical defect, unless the provider caused the defect or knew or should have known of the defect and neglected to repair it." Sewell, 600 So.2d at 580, n. 6. We believe this reasoning was unnecessary to the resolution of that case, because the plaintiff there did not allege any negligence whatsoever on the part of the health care provider.[3] The Sewell decision should not be interpreted to mean that any alleged negligence on the part of a health care provider will bring the claim of an unintentional tort within the provisions of the Medical Malpractice Act. As this court has made clear, the limitations on liability conferred by the MMA apply only to claims of negligence by the health care provider in the provision of health care or professional services to a patient.
Thus, we turn to the question of whether the plaintiff's allegation that the hospital failed to repair the wheelchair and failed to insure that the wheelchair was in proper working order before returning it to service is one "based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient...." "Health care" in the context of this case means "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement." "Professional services" is not defined in the Act. Applying the factors we set forth in Coleman v. Deno,[4] we conclude that the negligent failure to repair a wheelchair under the circumstances of this case does not constitute medical malpractice within the provisions of the MMA.

(1) Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill.

We find that the particular wrong alleged here, that the hospital negligently failed to repair the wheelchair and failed to insure that it was in proper working condition before returning it to service, is neither "treatment related" nor caused by a dereliction of "professional skill" within the *790 meaning of the Medical Malpractice Act. The court of appeal reasoned that the transportation of a patient in a wheelchair as the patient is being discharged from the facility is part of the overall treatment of the patient, and is therefore "treatment related." While that reasoning might apply in a different case, the wrong complained of here is that the hospital negligently failed to repair the wheelchair and placed it back into service without verifying that it was properly repaired. Those acts are not directly related to, nor do they involve, "treatment" of this patient.
Further, no "professional skill" was exercised in the repairing of the wheelchair or the decision to place it back into service. There is no allegation remaining in the petition as supplemented and amended that either the hospital or its employee was negligent in the transporting of or the decision to transport the patient in this manner. As we observed in Coleman v. Deno, the significance of the term "malpractice" is that it is used to differentiate professionals from nonprofessionals for purposes of applying these statutory limitations of tort liability. 01-1517, p. 15; 813 So.2d at 315. Here, there has been no showing that a dereliction of professional medical skills resulted in the injury to the plaintiff.

(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached.

With regard to the alleged negligent failure to repair a wheelchair, we cannot envision the need for expert medical evidence to determine whether the appropriate standard of care was breached. The court of appeal opined that the jury would have to look to the hospital's policies regarding the maintenance and inspection of equipment used to transport patients. The appeal court reasoned that "expert testimony" would be required as to whether these procedures were appropriate and adhered to. While expert testimony might be necessary to establish a duty and breach thereof, there has been no showing that expert medical testimony will be necessary to establish the proper maintenance procedures regarding this wheelchair. Indeed, counsel for the defense conceded at oral argument that expert medical testimony would not be necessary to determine the appropriateness of a maintenance plan for the wheelchairs. Instead, the defendant argues that "expert testimony" will be required for the plaintiff to carry her burden of proof, such as the duties of a transport aide or nurse in transporting a patient from one area of the hospital to another. Again, while such evidence might be appropriate in another case, in this case, the wrong alleged is negligence in the repair of the wheelchair and that the hospital failed to insure that the wheelchair was in proper working order before returning it to service. We see no necessity for expert medical evidence, and the defendant has not shown otherwise.

(3) Whether the pertinent act or omission involved assessment of the patient's condition.

The pertinent acts or omissions in this case are that the wheelchair was not properly repaired and that the hospital failed to insure that the wheelchair was in proper working order before returning it to service. Such acts or omissions do not implicate or require an assessment of a patient's medical condition. The court of appeal, apparently addressing the allegations of the original petition before it was supplemented and amended, found that the hospital employee's decision to use a wheelchair to transport the patient involved an assessment of her condition. There is simply no showing that this plaintiff's transportation by wheelchair to the *791 parking lot involved an assessment of her condition by the hospital's employee. The defendant argues that the aide must have made such an assessment before determining whether the plaintiff would be allowed to walk or would be transported by wheelchair or gurney to her vehicle. However, there is no evidence, such as testimony from the employee, that such a decision was actually made in this case; moreover, the pertinent act or omission was not the decision to transport this patient by wheelchair, but the faulty repair of the wheelchair.[5]

(4) Whether the incident occurred in the context of physician/patient relationship, or was within the scope of activities which a hospital is licensed to perform.

The repair and use of a wheelchair to transport a patient has not been shown to be within the scope of activities a hospital must first be licensed to perform. While the transporting of a patient using a wheelchair might be an expected activity of a hospital, hospitals engage in all sorts of activities, and not every activity requires licensing from the state. As the defendant admits in brief, none of the standards set forth by the Louisiana Department of Health and Hospitals pertains specifically to the use of wheelchairs.

(5) Whether the injury would have occurred if the patient had not sought treatment.

This factor initially weighs to some extent in favor of the defendant, because the plaintiff likely would not have been transported in the wheelchair had she not sought treatment at the hospital. Such reasoning, however, employs a "but for" rationale that may be overly facile. It is just as reasonable to say that any visitor to the hospital, even those not seeking treatment, who used this particular wheelchair could have suffered injury.

(6) Whether the alleged tort was intentional.

As the court of appeal found, there is no allegation that the tort allegedly committed by the health care provider or its employee was intentional.

CONCLUSION
In derogation of the general rights of Louisiana tort victims, the Medical Malpractice Act grants qualified health care providers certain limitations on liability for unintentional torts that constitute medical malpractice as defined in the Act. With the assistance of the factors we set forth in Coleman v. Deno, we have applied the Act's definition of medical malpractice to the allegations set forth in the plaintiff's petition as supplemented and amended, and we conclude that the claims therein do not fall within the provisions of the MMA. Accordingly, because no submission of the claim to a medical review panel was required by the Act, the lower courts erred in sustaining the defendant's exception of prematurity and dismissing the plaintiff's action. Therefore, the rulings of the lower courts are reversed and this matter is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
NOTES
[*] Judge Phillip C. Ciaccio, retired, sitting ad hoc for Associate Justice Chet D. Traylor, recused.
[1] In her original petition, the plaintiff alleged that she had been a patient at West Jefferson Medical Center and that the she was being pushed in the wheelchair to the parking lot of the hospital. She had also alleged that the defendant's employee negligently failed to inspect the wheelchair before using it, failed to use reasonable measures or precautions to avoid the incident, carelessly used the wheelchair to transport her when he knew or should have known that it was not fit for its intended purpose, and that he failed to use reasonable care under the circumstances. As to the defendant, the plaintiff had made similar allegations and also alleged that the hospital carelessly allowed one of its employees to use the wheelchair to transport her, failed to implement proper safety, inspection or maintenance policies and procedures to insure the wheelchair was in good operating condition, and failed to properly maintain and keep the wheelchair in a reasonably safe working condition. Some of these allegations, however, were essentially abandoned, as plaintiff's counsel acknowledged at oral argument, when the plaintiff filed her second supplemental and amending petition.
[2] The record reflects that the district court properly granted the plaintiff leave to file her second supplemental and amending petition. See La.Code Civ. Proc. art. 1151; La.Code Civ. Proc. art. 1155. The plaintiff's motion to file the second supplemental and amending petition was granted by the trial judge with an order signed on April 11, 2003, the day of the hearing on the exception of prematurity. Additionally, the transcript of that hearing reveals the trial judge stated he would permit the plaintiff to file an amending petition.
[3] Furthermore, Justice Marcus in his concurrence disapproved of the strict liability distinction applied by the majority and simply noted that "the collapse of the hospital bed was not related to health care or professional services rendered[; t]herefore, the Medical Malpractice Act is not applicable." 600 So.2d at 580, Marcus, J., concurring.
[4] Although the first three factors adopted in Coleman v. Deno have been referred to as the Sewell factors, the Sewell court simply mentioned those factors in a footnote, 600 So.2d at 578, n. 3, and did not apply them in its resolution of the case, which turned on the allegation of strict liability.
[5] The plaintiff suggested it is more likely that the hospital had a global policy with regard to transporting discharged patients via wheelchair to the hospital's entrance. The defendant countered that such a global policy would require expert medical testimony regarding the appropriateness of such a policy. In any case, the policies of the hospital are not in evidence.