898 So.2d 466 (2004)
Shirley Hoover WILD, Juanita Hoover Kristoph, Joan Hoover Baumbach, Glenn Hoover, and Rudolph Hoover, Jr.
v.
NS'NG, INC. d/b/a Hammond Nursing Home and XYZ Insurance Company.
No. 2004 CW 0933.
Court of Appeal of Louisiana, First Circuit.
December 30, 2004.
Rehearing Denied March 8, 2005.
*468 Brian A. Gilbert, New Orleans, Counsel for Plaintiffs/Relators Shirley Hoover Wild, et al.
Thomas C. Cowan, Ashley Miller Scott, New Orleans, Counsel for Defendant/Respondent NS'NG, Inc. d/b/a Hammond Nursing Home.
Before: CARTER, C.J., PETTIGREW and McDONALD, JJ.
CARTER, C.J.
This matter comes before this court on a writ of certiorari granted to consider the correctness of the trial court's judgment sustaining the dilatory exception raising the objection of prematurity filed by defendant, NS'NG, Inc. d/b/a Hammond Nursing Home (HNH).

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Shirley Hoover Wild, Juanita Hoover Kristoph, Joan Hoover Baumbach, Glenn Hoover, and Rudolph Hoover, Jr., are the surviving major children of Rudolph Hoover, Sr., who, at the time of his death, was a ninety-six-year-old resident of HNH.
On April 14, 2003, the same day he was released from an in-patient hospital stay for pneumonia, Mr. Hoover walked out of HNH through an unlocked exit door. Mr. Hoover fell; the plaintiffs allege he tripped over a cement drop-off leading to an area of uneven, broken pavement. Mr. Hoover died the next day, April 15, 2003. Dr. Merlin Allen, the Medical Director of HNH, stated that autopsy results indicate Mr. Hoover's death was the result of heart failure.
On July 25, 2003, plaintiffs filed a complaint with the Louisiana Patient's Compensation Fund, alleging medical negligence in HNH's failure to properly monitor and care for Mr. Hoover, including the failure to properly assess and mitigate the risk of his elopement from the facility.
On July 28, 2003, plaintiffs filed this suit in district court, asserting a cause of action in premises liability due to HNH's alleged negligence in failing to alleviate an unreasonably dangerous condition on its premises. In response, HNH filed a dilatory exception raising the objection of prematurity, asserting that, because it is a qualified healthcare provider under the Louisiana Medical Malpractice Act (MMA), all claims against it must first be submitted to a medical review panel, as provided for in LSA-R.S. 40:1299.47. The trial court sustained HNH's exception, and plaintiffs filed an application for supervisory relief. This court granted a writ of certiorari so that it can be determined whether the claims raised in plaintiffs' district court petition are allegations of medical malpractice and, therefore, must first be presented to a medical review panel.

DISCUSSION
Under the MMA, LSA-R.S. 40:1299.41, et seq., all medical malpractice claims against a qualified health care provider *469 such as HNH must first be submitted to a medical review panel for consideration. The dilatory exception raising the objection of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for an opinion by a medical review panel before filing suit against the provider. Houghton v. Our Lady of the Lake Hosp., Inc., 03-0135 (La.App. 1 Cir. 7/16/03), 859 So.2d 103, 106. Whether the lawsuit is premature is to be determined by the facts existing at the time the lawsuit is filed. Houghton, 859 So.2d at 109. The burden of proving prematurity is on the exceptor, in this case HNH; therefore, HNH must show that it is entitled to a medical review panel. Williamson v. Hospital Service District No. 1 of Jefferson, 04-0451 (La.12/01/04), 888 So.2d 782, 785.
Plaintiffs submit their district court suit is not premature, as their district court action is solely under a general tort law theory of recovery, namely premises liability under LSA-C.C. arts. 2317, 2317.1, and 2322. Plaintiffs allege Mr. Hoover left the nursing home through an "unmarked and unsafe drop-off adjacent to an area of severely cracked, displaced and uneven concrete or similar surface material." Plaintiffs specify HNH was negligent in failing to adequately maintain the surface, having a dangerous drop-off at the threshold, failing to provide handrails, failing to warn, failing to restrict access to an unreasonably dangerous area, and failing to provide a reasonably safe area for pedestrian traffic.
Not every negligent act or omission by a health care provider constitutes medical malpractice under the MMA. Even though all medical malpractice claims are personal injury claims, every personal injury claim is not a medical malpractice claim. Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, 315. To constitute a medical malpractice claim, the alleged negligent act must be related to the nursing home resident's medical treatment at the nursing home. Richard v. Louisiana Extended Care Centers, Inc., 02-0978 (La.1/14/03), 835 So.2d 460, 469. The Louisiana Supreme Court recently stated in Williamson:
This court has, without exception, emphasized that the MMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," La.Rev.Stat. 40:1299.41(I), and that all other tort liability on the part of the qualified health care provider is governed by general tort law.
888 So.2d at 786.
"Malpractice" for purposes of the MMA is defined in pertinent part as:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers.
LSA-R.S. 40:1299.41 A(8).
The MMA defines "health care" as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement." LSA-R.S. 40:1299.41 A(9).
In 2002, the Louisiana Supreme Court adopted a six-factor test for determining whether alleged negligent conduct by a qualified health care provider constitutes "malpractice." Factors to be considered when evaluating the evidence include:

*470 (1) Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) Whether the pertinent act or omission involved assessment of the patient's condition;
(4) Whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities that a hospital is licensed to perform;
(5) Whether the injury would have occurred if the patient had not sought treatment; and
(6) Whether the tort alleged was intentional.
Coleman, 813 So.2d at 315-16.
The negligence alleged in plaintiffs' petition was the failure to adequately maintain the premises to ensure no one would fall upon crossing the threshold and stepping onto the walkway surface. Expert medical evidence will not be necessary to determine whether a defect existed on the premises and whether that defect created an unreasonable risk of harm. Although the care of physically and mentally incapacitated patients is the type of health care for which nursing homes are generally dedicated (McKnight v. D & W Health Services, Inc., 02-2552 (La.App. 1 Cir. 11/7/03), 873 So.2d 18, 23), building maintenance has not been shown to be within the scope of activities that a nursing home must be licensed to perform in the exercise of its care-giving function.
Any visitor to the nursing home, not just a resident, using this allegedly defective threshold and walkway could have suffered injury. Compare Williamson, 888 So.2d at 791.

CONCLUSION
Coverage of the MMA should be strictly construed because the limitations of the MMA on the liability of qualified health care providers is special legislation in derogation of the rights of tort victims. Williamson, 888 So.2d at 787. The limitations on liability conferred by the MMA apply only to claims of negligence by the health care provider in the provision of "health care" or "professional services" to a patient. Williamson, 888 So.2d at 786. The negligent acts as alleged in plaintiffs' district court petition are not sufficiently related to "health care" or "professional services" so as to fall within the provisions of the MMA. Plaintiffs' action is not premature.
This writ is granted; the trial court judgment sustaining HNH's exception raising the objection of prematurity is reversed; and judgment is entered in favor of the plaintiffs, Shirley Hoover Wild, Juanita Hoover Kristoph, Joan Hoover Baumbach, Glenn Hoover, and Rudolph Hoover, Jr.
WRIT GRANTED.