920 So.2d 393 (2006)
Arlon Ray WILSON, Plaintiff-Appellant,
v.
INVACARE CORPORATION and Christus Health Northern Louisiana d/b/a Schumpert Medical Center, Defendants-Appellees.
No. 40,507-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2006.
*394 Jones, Odom, Davis & Politz, L.L.C. by John S. Odom, Jr., Shreveport, for Appellant.
Adams & Reese, L.L.C. by Ann Michelle Halphen, Andrew C. Kolb, Baton Rouge, for Appellee Christus Health Northern Louisiana dba Schumpert Medical Center.
Leake and Andersson, L.L.P. by Stanton E. Shuler, Jr., New Orleans, for Appellee Invacare Corp.
Before STEWART, GASKINS and LOLLEY, JJ.
LOLLEY, J.
Arlon Ray Wilson appeals a judgment by the First Judicial District Court, Parish of Caddo, Louisiana, dismissing his claims against Christus Health Northern Louisiana d/b/a Schumpert Medical Center ("Schumpert"). The trial court concluded that the action against Schumpert was a medical malpractice case and dismissed the action as premature. For the following *395 reasons, we reverse that judgment and remand for further proceedings.

FACTS
According to the petition, Wilson is a paraplegic who relies on a wheelchair for mobility. He is able to perform various personal tasks without assistance including moving himself from his wheelchair into a bed or into the shower; however, when in the shower, Wilson must sit on a shower stool, also called a transfer bench.
On December 19, 2003, Wilson was a patient at Schumpert, a Shreveport hospital.[1] He was scheduled to be discharged that day. Prior to his discharge from the hospital, Wilson informed the staff that he wished to take a shower, and a nurse placed a shower stool, manufactured by Invacare Corporation, into the shower.[2] Wilson alleged that when he sat on the shower stool and leaned against the bench back, the transfer bench broke, causing him to fall and strike his head and right hip against the shower wall, injuring himself.
Wilson filed this lawsuit against Schumpert and Invacare. In addition to his claims that he injured his hip as a result of the fall, Wilson further alleges that during the next several months he suffered serious complications from his hip injury including decubitus ulcers and osteomyelitis. The petition specifically alleges, as to Schumpert, that Wilson's injuries were proximately caused by Schumpert's failure to provide him with a safe transfer bench, citing La. C.C. arts. 2317 and 2317.1. He further alleges that:
The screws holding the transfer bench back frame support arms onto the frame of the transfer bench were so obviously rusted that Schumpert personnel knew or in the exercise of reasonable care should have known that corrosion was taking place between the screw fasteners and the support arms for the back which were fastened to the frame of the transfer bench. The streaks of rust (sic) the frame of the transfer bench, which would have been obvious from a simple inspection of the transfer bench, could have and should have been seen by anyone who had examined the transfer bench for soundness before issuing it to patients for their use in the shower.
The petition notes that a medical review panel proceeding had already been convened against Schumpert and was still pending.
Schumpert filed an exception of prematurity, noting that Wilson had made substantially the same allegations of wrongdoing against it in the medical review panel proceeding, which was still pending. The trial court heard argument on the exception, sustaining it and dismissing Wilson's lawsuit as premature. After the trial court signed the judgment dismissing the lawsuit, Wilson sought supervisory writs from this court. Because the judgment dismissing his action was an appealable judgment, we remanded the case to the trial court for perfection as an appeal. The appeal is now before this court for consideration.

DISCUSSION
On appeal, Wilson argues that the trial court erred in two ways. First, he argues that the trial court erred in determining that his injuries stemming from the alleged collapse of the shower transfer bench fall within the scope of the Medical Malpractice Act, La. R.S. 40:1299.41, et seq. Second, he states that the trial court *396 erred in granting Schumpert's exception of prematurity. For the following reasons, we agree.
The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim to a medical review panel before filing suit against the provider. La. R.S. 40:1299.47; Rogers v. Hickory Manor Nursing & Rehabilitation, L.L.C., 39,626 (La.App.2d Cir.05/11/05), 902 So.2d 1150, citing Spradlin v. Acadia-St. Landry Medical Foundation, XXXX-XXXX (La.02/29/00), 758 So.2d 116 and Henry v. West Monroe Guest House, Inc., 39,442 (La.App.2d Cir.03/02/05), 895 So.2d 680. Under the Louisiana Medical Malpractice Act ("MMA"), a claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not been first screened by a pre-suit medical review panel. Id.
The MMA's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the MMA should be strictly construed. These limitations apply only in cases of liability for malpractice as defined therein. Any other liability of the health care provider to the patient is not subject to these limitations. Williamson v. Hospital Service Dist. No. 1 of Jefferson, XXXX-XXXX (La.12/01/04), 888 So.2d 782, citing Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992). To determine whether a claim against a qualified health care provider is subject to dismissal for want of adhering to the procedural dictates of the MMA, the trial court should examine the claim in light of the factors set forth in Coleman v. Deno, XXXX-XXXX (La.01/25/02), 813 So.2d 303. Those factors are:
(1) Whether the particular wrong is "treatment related" or caused by dereliction of professional skill;
(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) Whether the pertinent act or omission involved assessment of the patient's condition;
(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) Whether the injury would have occurred if the patient had not sought treatment; and
(6) Whether the tort alleged was intentional.
Id. at 315-16.
In Williamson, the court discussed the Coleman factors in the context of defective hospital equipment. Specifically, the Williamson plaintiff was discharged from the hospital and was being pushed by a hospital employee in one of the hospital's wheelchairs when one of the chair's wheels fell off, which caused the plaintiff to fall and be injured. The plaintiff sued the hospital, alleging inter alia that the hospital negligently repaired the wheelchair. The hospital filed an exception of prematurity which the trial court sustained, and the appellate court affirmed. However, the supreme court reversed that judgment, holding that the MMA should be strictly construed. A crucial consideration was whether the alleged tort in this case was sufficiently related to health care or professional services so as to fall within the provisions of the MMA. Williamson, supra at 788. Applying the Coleman factors, the Williamson court concluded that the failure to properly repair the wheelchair before *397 using it to transport the plaintiff was not an act of medical malpractice.
In this case, the allegations against Schumpert regarding the use of the transfer bench are substantially like those made in Williamson regarding the wheelchair. Similar to the findings by the Williamson court, we do not consider the alleged tort cited by Wilson to be sufficiently related to health care or professional services to merit dismissal for prematurity. The only allegation in Wilson's petition so related was the short statement that a doctor noted the fall in Wilson's discharge summary but took no steps to treat the injury. Clearly, the allegations made by Wilson imply that the cause of his injury was the failure by Schumpert to notice the defects in the transfer bench and repair or prevent the use of same  not a failure to initially treat the injury by a physician or hospital staff. The claim by Wilson that Schumpert personnel could have and should have seen the defect in the transfer bench does not sound in medical malpractice. So considering, we conclude that Wilson's allegations do not fit the Coleman test and are purely tortious in nature; thus his claim was not premature. Therefore, as to these particular facts, the trial court was in error in granting Schumpert's exception of prematurity.

CONCLUSION
For the foregoing reason, the judgment of the trial court is reversed and remanded for further proceedings at the cost of Christus Health Northern Louisiana d/b/a Schumpert Medical Center.
REVERSED AND REMANDED.
NOTES
[1] The hospital is a qualified health care provider for purposes of the Medical Malpractice Act, La. R.S. 40:1299.41 et seq. p. 86.
[2] Invacare is also a defendant in these proceedings, but not a party to this appeal.