975 So.2d 662 (2008)
Johnny LEONARD, Sr. and Linda Leonard, Plaintiffs-Appellants,
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HOSPITALS-RUSTON DEVELOPMENTAL CENTER, Defendant-Appellee.
No. 42,893-CA.
Court of Appeal of Louisiana, Second Circuit.
January 30, 2008.
Rehearing Denied March 13, 2008.
McGlynn, Glisson & Koch, A Professional Law Corporation by Benjamin Paul Mouton, Richard Ray Storms, New Orleans, for Appellant.
Brian D. Landry, Daven M. Hill, Special Assistant Attorneys General, for Appellee.
Before DREW, MOORE & LOLLEY, JJ.
DREW, J.
In this wrongful death and survival action arising out of the death of their son at the Ruston Developmental Center, plaintiffs appeal a judgment granting the exception of prematurity. Finding that *663 plaintiffs' allegations sound in general negligence, and not medical malpractice, we reverse the judgment granting the exception of prematurity and remand.

FACTS
Johnny Ray Leonard, Jr., ("Johnny Ray") was a client of the Ruston Developmental Center ("Center"), where he resided in group home # 100. On December 1, 2005, the staff at the facility accessed the medication room and medicine cabinet, and administered the 4:00 p.m. medications to the residents.
At about 8:00 p.m. that evening, one of the residents gained access to the medication room and used a spoon to open the medicine cabinet.[1] Johnny Ray obtained an unknown quantity of quetiapine (Seroquel),[2] which he ingested. The Center's staff discovered the problem, yet were unable to obtain timely medical treatment for Johnny Ray for at least the following reasons:
 They could not call 911 because of an inability to make contact with the facility's phone system; and
 the on-duty supervisor was unavailable.
After an unacceptable delay, Johnny Ray was finally transported to Lincoln General Hospital, where he was pronounced dead at 10:20 p.m.
Johnny Ray's parents filed suit against the State of Louisiana, Department of Health and Hospitals ("DHH"). His parents asserted that their claim arose out of ordinary negligence, not medical malpractice. DHH filed an exception of prematurity, characterizing the claim as a medical malpractice action that required, before filing suit, submission to a medical review panel, as per La. R.S. 40:1299.39.1. The learned trial court agreed with DHH and dismissed this suit in this admittedly close case. Johnny Ray's parents now appeal.

DISCUSSION
Not every unintentional tort committed by a qualified health care provider falls within the confines of the Louisiana Medical Malpractice Act ("LMMA"). Williamson v. Hospital Service Dist. No.1 of Jefferson, XXXX-XXXX (La.12/1/04), 888 So.2d 782. The Louisiana Supreme Court recently addressed this important distinction:
This court has steadfastly emphasized that the LMMA and its limitations on tort liability for a qualified health care provider apply only to claims "arising from medical malpractice," and that all other tort liability on the part of the qualified health care provider is governed by general tort law. Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315 (finding claim for alleged wrongful transfer from one emergency room to another of a patient whose left arm was later amputated sounded in medical malpractice); Williamson, 04-0451 at p. 5, 888 So.2d at 786. This is so because, as we have oft repeated, the LMMA's limitations on the liability of health care providers were created by special legislation in derogation of the rights of tort victims. Williamson, 04-0451 at p. 5, 888 So.2d at 786; Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992) (finding strict liability for defects in hospital bed that collapsed resulting in injury to patient was not included within definition of *664 medical malpractice under the LMMA). In keeping with this concept, any ambiguity should be resolved in favor of the plaintiff and against finding that the tort alleged sounds in medical malpractice. The limitations of the LMMA, therefore, apply strictly to cases of malpractice as defined in the LMMA. Williamson, 04-0451 at p. 5, 888 So.2d at 786.
LaCoste v. Pendleton Methodist Hosp., L.L.C., XXXX-XXXX, pp. 6-7 (La.9/5/07), 966 So.2d 519, 524.
Although this case falls under the Medical Liability for State Services Act ("MLSSA"), and not the LMMA, the rationale behind strictly construing the LMMA against coverage is also applicable to claims under the MLSSA. See Fincher v. State, Dept. of Health & Hospitals, 29,640 (La.App.2d Cir.4/2/97), 691 So.2d 844, where this court noted that the MLSSA derogates from the rights of injured parties and must be strictly construed against finding coverage.
In Coleman v. Deno, XXXX-XXXX (La.1/25/2002), 813 So.2d 303, the supreme court provided six factors to aid courts in determining whether a claim sounds in medical malpractice and must first be presented to a medical review panel.[3] Applying these six factors, we conclude that this matter strongly preponderates as a general negligence case, not a medical malpractice case:
 Whether the particular wrong is related to treatment or caused by a dereliction of professional skill. The alleged failure to supervise Johnny Ray and protect him is not related to medical treatment or a dereliction of professional skill. Johnny Ray only required the supervision of someone responsible enough to look out for his well-being as a resident at the facility.
 Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached. It will not take expert medical evidence to determine there was a breach of the standard of care. There is no need to retain medical experts to pore over medical records, establish a standard of care, and opine on whether there was a breach. Medical records from the Center may not be material in this matter, and the trier of fact will not need expert testimony to determine the standard of care and whether or not there was a breach.
 Whether the pertinent act or omission involved assessment of the patient's condition. The failure to prevent Johnny Ray's access to dangerous medicine in no way involved an assessment of his condition.
 Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. This incident did not occur in the context of a doctor-patient relationship. Rather, considering Johnny Ray's mental state and the roles played by the Center's staff, it is more akin to the relationship between a young student and his teacher.
 Whether the injury would have occurred if the patient had not sought treatment. Johnny Ray was not seeking medical treatment at the facility.
 Whether the tort alleged was intentional. The allegations are claims of general negligence.
*665 DHH relies heavily upon Fincher, supra, where we, after assessing those particular facts against the standards set forth in Coleman v. Deno, supra, found that the Fincher claims sounded in medical malpractice. This reliance is misplaced, as the instant case and Fincher are factually distinguishable.
In Fincher, the facility in question paid out well over half its budget on medical expenditures. Here, that figure is 2.34%. In Fincher, the client in question had severe medical needs being met at the facility, contrary to Johnny Ray's situation, in which he had no severe medical needs, and received minimal, if any, medical services at the Ruston Developmental Center.
In Fincher, the Center failed to follow medical and therapeutic directives formulated by physicians and therapists with the purpose of minimizing that client's propensity to fall. The instant situation does not involve such directives as what is alleged is a failure to monitor and supervise residents.
In Fincher, an LPN examined the client immediately after his fall; unfortunately, nothing like that happened here. On the contrary, medical care for Johnny Ray was inexcusably delayed, leading arguably to an extremely negative impact on the possibility that he could have survived his self-inflicted poisoning. Also, after the client in Fincher fell, the Center failed to diagnose and treat the client's post-fall condition, obviously an allegation of malpractice. Johnny Ray's situation does not involve that factual backdrop.
More helpful in resolving our current situation are two cases cited by the plaintiffs, LaCoste, supra, and Wilson v. Invacare, 40,507 (La.App.2d Cir.1/25/06), 920 So.2d 393, writ denied, XXXX-XXXX (La.4/28/06), 927 So.2d 295. In Wilson, a hospital patient was injured when a shower transfer bench collapsed. This court concluded that his claim was tortious in nature. In Lacoste, a patient in a New Orleans hospital died after life support systems upon which she was dependent did not function because of the loss of electrical power caused by Hurricane Katrina. The allegations in that case were that the defendants were liable for not ensuring that there would be sufficient emergency power or that the hospital would not flood when designing, constructing, and maintaining the hospital; for failing to implement an adequate evacuation plan; for failing to have a facility available for transfer of patients; and for failing to have a plan for the transfer of patients in the event of a mandatory evacuation. The supreme court concluded that these claims did not fall within the purview of the LMMA.[4]
Finally, the possibility that some of the allegations may appear to sound in medical malpractice, i.e., the failure to have medical personnel available to respond to medical emergencies, is of no moment. As noted by this court in Wilson v. Invacare, 40,507 at pp. 4-5, 920 So.2d at 397:
Similar to the findings by the Williamson court, we do not consider the alleged tort cited by Wilson to be sufficiently related to health care or professional services to merit dismissal for prematurity. The only allegation in Wilson's petition so related was the short statement that a doctor noted the fall in Wilson's discharge summary but took no steps to treat the injury.
Accordingly, the trial court's ruling in sustaining defendant's exception of prematurity *666 is reversed, and the matter remanded to the learned trial court.

DECREE
With appeal costs of $170.00 assessed against DHH, we REVERSE the judgment of the trial court which granted the exception of prematurity and dismissed this suit, and REMAND to the trial court for further proceedings.[5]

APPLICATION FOR REHEARING
Before BROWN, CARAWAY, DREW, MOORE & LOLLEY, JJ.
Rehearing denied.
NOTES
[1] It is alleged in the alternative that the medications had not even been placed in the cabinet because the cabinet had been locked and the key was not readily available.
[2] An internet search reveals that this drug is an antipsychotic medicine used to treat bipolar disorder.
[3] This court has applied these factors by analogy for an understanding of "malpractice" and "health care" under the MLSSA. See Crum v. State, 41,059 (La.App.2d Cir.5/17/06), 931 So.2d 400, writ denied, XXXX-XXXX (La.9/15/06), 936 So.2d 1274.
[4] In a footnote, the supreme court noted that its review in Lacoste was limited to the factual allegations in the petition as amended.
[5] Included in this $170.00 is a $25.00 fee for defendant's motion for extension of time to file brief. Defendant was exempt from prepayment of this fee.