# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 04-751


**JOHN DAVID NASH**

**VERSUS**

**DAVID J. BROWN, M.D.,**

**ET AL**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. 2003-0010
HONORABLE HERMAN I. STEWART  JR., DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## JOHN D. SAUNDERS
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Oswald A. Decuir, and James T. Genovese,
Judges.


### WRIT GRANTED.

**John E. Bergstedt**
**The Bergstedt Law Firm**
**P. O. Box 1884**
**Lake Charles, LA 70602**
**(337) 436-4600**
**Counsel for Defendant Respondent:**
**David J. Brown, M.D.**
**DeRidder Surgical Clinic**

**Jimmy Roy Faircloth  Jr.**
**Faircloth & Davidson, L.L.C.**
**P.O. Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**Counsel for Plaintiff/Applicant:**
**John David Nash**

**SAUNDERS, J.**

This issue before this court results from defendants' alleged delay in performing administrative duties which prevented plaintiff from commencing physical therapy. Plaintiff claims that this delay exacerbated a pre-existing condition. The trial court ruled that this matter falls within the purview of the Medical Malpractice Act. We are called upon to review that determination. We find that this matter is not subject to the Medical Malpractice Act and reverse the trial court.

**FACTS**

Plaintiff suffered a nerve injury in 1998 resulting in nearly complete paralysis of his right lower leg and foot. After a nerve graft procedure, plaintiff's condition began to improve. On January 8, 2002, he visited Dr. David Brown for examination of an ulcer on his right foot. That same day the ulcer was accurately diagnosed as a pressure ulcer and physical therapy and a pressure controlled boot were ordered for treatment. On the following day, plaintiff contacted the physical therapist to begin treatment but was told that he would have to wait. Dr. Brown's office had to obtain payment approval before the therapist would commence treatment. Dr. Brown's office did not take the administrative steps necessary to secure payment for plaintiff's physical therapy until February 6, 2002 when the worker's compensation adjuster for plaintiff's employer contacted defendant.

Due to the failure to act by Dr. Brown's office, plaintiff did not begin physical therapy until one month after the treatment was ordered. Plaintiff alleges that this delay caused the ulcer to double in size resulting in more extensive therapy. Instead of taking a few months to recover, plaintiff spent nearly an entire year on crutches. Plaintiff further claims that this extended period of time spent on crutches caused muscle atrophy and slowed the improvement in his overall condition. Basically, the

improvement in plaintiff's condition was retarded because this extended period of time spent on crutches hindered the therapeutic benefits of the aforementioned nerve graft procedure. This setback, plaintiff argues, prevented him from undergoing an additional surgical procedure in November 2003 and destroyed the chance of restoring additional nerve function to his partially paralyzed leg.

**PROCEDURAL HISTORY**

Plaintiff filed suit in district court and defendants then filed an exception of prematurity arguing that plaintiff's claim is based in malpractice and should have been submitted to a Medical Review Panel. Plaintiff agreed to proceed to the panel but reserved his right to challenge the applicability of the Medical Malpractice Act. Plaintiff eventually filed a Motion to Dissolve the Panel. This motion was denied and plaintiff sought supervisory writs.

**ASSIGNMENT OF ERROR**

1)   The trial court erred in concluding that defendants' failure to timely request payment approval for treatment by a different health care provider, which resulted in delayed treatment by the second health care provider, is covered by Louisiana's Medical Malpractice Act.

**STANDARD OF REVIEW**

When reviewing questions of law, appellate courts are to determine if the trial court's ruling was legally correct or not. *Cleland v. City of Lake Charles*, 02-0805 (La.App. 3 Cir. 5/5/03), 840 So.2d 686, *writ denied*, 03-1380 (La. 9/19/03), 853 So.2d 644.

**DISCUSSION**

The Medical Malpractice Act (hereinafter referred to as "MMA") was enacted in 1975 as a response to a "perceived medical malpractice insurance 'crisis.'" *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451 (La. 12/1/04), 888 So.2d 782, 785, quoting *Hutchinson v. Patel*, 93-2156 (La. 5/23/94), 637 So.2d 415, 419. Because the question before us is whether this matter falls under the act, we must begin our analysis with an examination of the relevant terms of the act. The MMA defines tort as:

> any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.

La.R.S. 40:1299.41 A(7). Malpractice is defined as:

> any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

La.R.S. 40:1299.41 A(8). Finally, health care is defined as:

> any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.

La.R.S. 40:1299.41 A(9).

As previously noted, the MMA was enacted to remedy a perceived crisis involving medical malpractice. In order to accomplish these ends, the act bestowed two major benefits upon health care providers. Namely, there is a limit on the amout of damages and a medical review panel must review the claim before suit is commenced. Because these provisions limit the rights of tort victims, the supreme court requires that the act be strictly construed against health care providers. *Sewell v. Doctors Hosp.*, 600 So.2d 577 (La.1992). In addition to calling for a strict interpretation of the MMA, the supreme court espouses six factors that should be considered when determining what conduct by a health care provider is covered by the Act. *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303. Those factors are:

> (1) whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
> (3) whether the pertinent act or omission involved assessment of the patient's condition,
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
> (5) whether the injury would have occurred if the patient had not sought treatment, and
> (6) whether the tort alleged was intentional.

*Id*. at 315-316. Given the strict construction applied to the MMA and after evaluating these factors, we find that the circumstances of this case preponderate against application of the act.

First, we will examine whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill. Given that plaintiff alleges that

defendants' negligence in securing payment authorization exacerbated his pre-existing condition and not that the decision to order the treatment was erroneous, we cannot conclude that the conduct complained of was related to treatment or arose from a "dereliction of professional skill." If the strict construction of the MMA is to have any meaning whatsoever, a line must be drawn between the professional and ministerial services rendered by health care providers. That line is evident in the facts of this case.

Plaintiff does not contend that the physical therapy should not have been ordered or that it was ordered when it should not have been. In short, he does not allege negligence in the professional services rendered by defendants. Rather, plaintiff argues that defendants were negligent in performing the ministerial aspects of their practice after they competently exercised professional skill in ordering the treatment. We agree. While the decision to order the physical therapy was treatment related, if not treatment in and of itself, and required professional skill, securing payment authorization for that treatment is nothing more than routine paperwork one would expect from a health care provider.

Second, we must determine whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached. As we just noted, the conduct complained of is a failure to perform ministerial duties. We see no way that "expert medical evidence" could have any bearing on whether defendants were adequately diligent in the performance of administrative duties like helping to secure payment for the treatment that was ordered. The standard of care simply does not pertain to medical issues. The parties will undoubtedly employ

medical testimony to demonstrate the physical effect of the delay in treatment; however, it is not required to determine whether the delay itself was negligent. In short, medical testimony bears upon the element of causation not that of duty or a breach thereof.

Third, we will examine whether the pertinent act or omission involved assessment of the patient's condition. As previously noted, the alleged misconduct occurred after plaintiff's condition was accurately assessed. Accordingly, the assessment of that condition is not an issue here.

Fourth, we must decide whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. While plaintiff was clearly one of defendants' patients, we do not feel that the inquiry ends there. Out of the six factors proposed by the supreme court, this one appears to be the single most lethal in terms of barring applicability of the MMA. If neither of these conditions are satisfied, it would be very difficult to deem the conduct complained of to be malpractice as defined by the act. Barring unusual circumstances, therefore, when neither of these conditions are present, the MMA will rarely apply.

As we have noted, however, the physician-patient relationship did exist here. In that case, the question becomes how much weight should be given to this factor. We decline to conclude that the mere presence of such a relationship requires applicability of the act. As the supreme court noted in *Williamson*, "[n]ot every unintentional tort committed by a qualified health care provider falls within the Medical Malpractice Act[.]" *Williamson*, 888 So.2d at 783. Accordingly, when this

factor is satisfied but the first, requiring that the alleged misconduct be treatment related, is not, the first factor should weigh more heavily in the final determination. In this matter, we find that the absence of the first factor diminishes the importance of the fourth because we have already determined that the alleged wrong was not treatment related.

Next, we determine whether the injury would have occurred if the patient had not sought treatment. This factor weighs in favor of defendants because the ulcer would have worsened as it did had plaintiff not sought treatment. Finally, we must examine whether the alleged wrong was intentional. There have been absolutely no allegations that defendants acted intentionally in any fashion whatsoever.

After examining all of the factors set forth by the supreme court, we find that they preponderate, especially due to the weight we give the first three factors under these particular facts, against applicability of the MMA. Because the conduct was not treatment related, does not require expert medical testimony, and did not involve assessment of the patient's condition, this case does not fall under the MMA. In summary we note that this case is simply not one that requires expert medical testimony for adjudication as a lay person is fully capable of determining whether defendants' delay in performing a secretarial function constitutes negligence.

**CONCLUSION**

The ruling of the trial court is reversed. This matter does not fall under the MMA and may proceed without the requirement of submission to a medical review panel. All costs are assessed against defendants.

**WRIT GRANTED.**