# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1442


**TINA DEROUEN AND HOWARD DEROUEN, III**

**VERSUS**

**PARK PLACE SURGICAL CENTER, LLC, ET AL.**

************

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO.  2009-3292 DIV. "J"
HONORABLE KRISTIAN EARLES,  DISTRICT JUDGE**


************

**JAMES T. GENOVESE
JUDGE**

************

Court composed of Oswald A. Decuir, James T. Genovese, and Shannon J. Gremillion, Judges.


**REVERSED.**

**Oliver "Jackson" Schrumpf
Law Offices of Oliver "Jackson" Schrumpf
and Charles Schrumpf (A PLC)
3801 Maplewood Drive
Sulphur, Louisiana 70663
(318) 625-9077
COUNSEL FOR PLAINTIFFS/APPELLANTS:**
      Tina Derouen and Howard Derouen, III

**Peter T. Dazzio**
**Kevin P. Riché**
**Watson, Blanche, Wilson & Posner**
**505 North Boulevard**
**Post Office Drawer 2995**
**Baton Rouge, Louisiana 70821-2995**
**(225) 387-5511**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
      **Park Place Surgery Center, LLC, and**
      **Our Lady of Lourdes Regional Medical Center**

**GENOVESE, Judge.**

Plaintiffs, Tina Derouen and her spouse, Howard Derouen, III, appeal the trial court's judgment granting an exception of prematurity in favor of Defendants, Park Place Surgery Center, LLC, and Our Lady of Lourdes Regional Medical Center. For the following reasons, we reverse.

## **FACTS**

Mrs. Derouen underwent surgery for a vaginal prolapse repair at Park Place Surgery Center, LLC, a joint venturer with Our Lady of Lourdes Regional Medical Center (collectively "Park Place") on December 6, 2006. The surgery, performed by Drs. Wayne P. Daigle and Edward F. Breaux, involved the installation of a Davol Bard Composix Kugel Hernia Mesh patch. Thirty-five days following Mrs. Derouen's discharge from Park Place, the United States Food and Drug Administration (FDA) issued a recall of the particular patch used in Mrs. Derouen's surgery. Mrs. Derouen alleges that although Park Place received notice that the FDA had issued a recall of the patch, it failed to notify her of the recalled product.

Mrs. Derouen alleges that subsequent to her surgery, she "continued to suffer bleeding, pain, and infections for over a year." On June 12, 2008, Mrs. Derouen was informed by another physician that the patch utilized in her surgery had been recalled. Mrs. Derouen underwent surgery on June 12, 2008, to remove the patch.

The Derouens requested that a medical review panel be convened to review malpractice claims against the physicians and Park Place. While this process was underway, the Derouens[1] also instituted the present litigation against Park Place. In response, Park Place filed an exception of prematurity, among other exceptions.

---

[1]Although Mr. Derouen is also a Plaintiff and has asserted his derivative claim of loss of consortium, for purposes of this opinion, we shall refer to the claims of the Derouens as being the claims of Mrs. Derouen.

Following a hearing on July 27, 2009, the trial court granted the exception of prematurity and dismissed Mrs. Derouen's claims against Park Place without prejudice. A judgment consistent therewith was signed by the trial court on August 6, 2009. Mrs. Derouen appeals.

## ASSIGNMENT OF ERROR

The sole assignment of error presented by Mrs. Derouen is whether "[t]he trial court erred in granting the [D]efendants' exception of prematurity."

## LAW AND DISCUSSION

Mrs. Derouen asserts that her claim against Park Place "is for [a] violation of a clerical or ministerial duty, not requiring expert testimony, to notify a former patient of the subsequent recall of a medical device previously implanted in the patient." As such, she argues that "the action is not controlled by the Medical Malpractice Act." Thus, Mrs. Derouen concludes that the present action is not premature despite an opinion not having yet been rendered by the medical review panel. To the contrary, Park Place contends that "this alleged cause of action is squarely within the definition of 'malpractice' in the Louisiana Medical Malpractice Act . . . and is subject to the Act's requirements and limitations." Therefore, in considering whether the trial court erred in granting Park Place's exception of prematurity, we are called upon to decide whether the asserted claims, based upon Park Place's alleged failure to notify Mrs. Derouen of the recall of the patch, fall within the ambit of the Medical Malpractice Act (MMA).

In a medical malpractice action brought against a private health care provider, our supreme court, in *LaCoste v. Pendleton Methodist Hospital, L.L.C.,* 07-08, 07-16, pp. 6-7 (La. 9/5/07), 966 So.2d 519, 523-24, opined as follows:

2

Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. La.Rev.Stat. 40:1299.47(A); *Williamson* [*v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-451, p. 4 (La. 12/1/04), 888 So.2d 782, 785]. This exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for consideration by a medical review panel before filing suit against the provider. La.Code Civ. Proc. art. 926; *Spradlin* [*v. Acadia-St. Landry Med. Found.*, 98-1977, p. 4 (La. 2/29/00), 758 So.2d 116, 119]; Frank L. Maraist & Harry T. Lemmon, 1 *Louisiana Civil Law Treatise, Civil Procedure* § 6.6, 116 (West 1999). In such situations, the exception of prematurity neither challenges nor attempts to defeat the elements of the plaintiff's cause of action; instead, the defendant asserts the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *Spradlin*, 98-1977 at p. 4, 758 So.2d at 119; Maraist & Lemmon, *supra*. The burden of proving prematurity is on the exceptor, in this case the defendant hospital, who must show that it is entitled to a medical review panel because the allegations fall within the LMMA. *Williamson*, 04-0451 at p. 4, 888 So.2d at 785 (finding alleged negligence of hospital in failing to repair wheelchair and in failing to make sure that wheelchair was in proper working condition did not arise from medical malpractice within meaning of LMMA); *Spradlin*, 98-1977 at p. 4, 758 So.2d at 119 (alleged patient "dumping" sounded in malpractice).

This court has steadfastly emphasized that the LMMA and its limitations on tort liability for a qualified health care provider apply *only* to claims "arising from medical malpractice," and that all other tort liability on the part of the qualified health care provider is governed by general tort law. *Coleman v. Deno*, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315 (finding claim for alleged wrongful transfer from one emergency room to another of a patient whose left arm was later amputated sounded in medical malpractice); *Williamson*, 04-0451 at p. 5, 888 So.2d at 786. This is so because, as we have oft repeated, the LMMA's limitations on the liability of health care providers were created by special legislation in derogation of the rights of tort victims. *Williamson*, 04-0451 at p. 5, 888 So.2d at 786; *Sewell v. Doctors Hospital*, 600 So.2d 577, 578 (La.1992) (finding strict liability for defects in hospital bed that collapsed resulting in injury to patient was not included within definition of medical malpractice under the LMMA). In keeping with this concept, any ambiguity should be resolved in favor of the plaintiff and against finding that the tort alleged sounds in medical malpractice. The limitations of the LMMA, therefore, apply strictly to cases of malpractice as defined in the LMMA. *Williamson*, 04-0451 at p. 5, 888 So.2d at 786.

In the case at bar, it is noted that Park Place is a private qualified health care provider. Consequently, the governing statutes are La.R.S. 40:1299.41 through La.R.S. 40:1299.49. In conducting our analysis, we begin with the express statutory definitions in the MMA found at La.R.S. 40:1299.41(A) (emphasis added), which provides as follows:

> (9) "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a **patient during** the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
>
> . . . .
>
> (13) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, **and also includes all legal responsibility of a health care provider arising from** acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, **or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient**.
>
> . . . .
>
> (15) "Patient" means a natural person, including a donor of human blood or blood components and a nursing home resident who receives or should have received **health care** from a licensed health care provider, under contract, expressed or implied.

Citing the definition of malpractice found at La.R.S. 40:1299.41(A)(13), Park Place asserts that "[t]he above statutory definition clearly and unambiguously encompasses within the [MMA] any unintentional tort based on a legal responsibility of a health care provider which arises from a defect or failure in a prosthetic device." Its argument is that the "legal responsibility" in the instant case of a duty to notify

4

Mrs. Derouen of the recall "would not arise at all were it not for the defect in the device and the subsequent recall." Additionally, "[a]s an alleged breach of a legal responsibility arising from a defect in a prosthetic device, the omissions complained of by plaintiffs are squarely within the ambit" of the MMA. We disagree.

In an effort to fit within the definition of malpractice contained in La.R.S. 40:1299.41(A)(13), Park Place focuses on the fact that Mrs. Derouen's surgery involved the implantation of a prosthetic device. However, as noted by Mrs. Derouen, "on detailed examination of plaintiff's claims in this case, the plaintiff[']s claims **against the hospital** are NOT for the injury caused by the defective device, but for the DELAY in notifying the hospital's former patient (or her physicians) of the recall that occurred 35 days after the patient was discharged from the hospital." Although an asserted claim based upon the existence of a defect in a prosthetic device is expressly encompassed in the definition of malpractice, a failure to notify, albeit of an alleged defect in a prosthetic device, is a distinction with a difference. This distinction, and the consequence thereof, of taking the claims of Mrs. Derouen out of the realm of medical malpractice and placing them in the arena of general tort litigation, is supported by express language of the MMA and the jurisprudence interpreting same.

The fourth circuit decision of *Garnica v. Louisiana State University Medical Center*, 99-113 (La.App. 4 Cir. 9/8/99), 744 So.2d 156, *writ denied*, 99-2859 (La. 12/17/99), 751 So.2d 879, is cited, and its application is argued, by the parties in the present appeal. Although *Garnica* involved the application of the MMA relative to

5

state services,[2] we find the analysis and reasoning of *Garnica* to be pertinent and germane to our determination herein. In *Garnica*, the plaintiff underwent the implantation of a Proplast prosthesis at the Louisiana State University Medical Center, School of Dentistry (LSU Dental School), in 1979. In 1990, the manufacturer advised oral surgeons to cease using the implants, and the FDA issued a "safety alert" advising that patients should be notified "of the defective product." *Id*. at 157. The plaintiff alleged that in 1991 she learned of the defective prosthesis, and, ultimately, she had surgery for its removal. When the plaintiff filed suit against the LSU Dental School in district court, she was met with an exception of prematurity based upon her failure to first bring her claims before a medical review panel. The trial court overruled the exception of prematurity, and the fourth circuit affirmed, stating as follows:

> In the present case[,] the determination of whether the hospital was liable based on the alleged failure to properly inform the patient of the defective jaw implant does not require expert medical testimony or evidence. The duty to notify the patient is a ministerial or clerical function and does not require any specialized training or knowledge. The duty did not arise from the performance of health care and was not during the patient's medical care, treatment or confinement under the definition of "health care."

*Id*. at 160.

In reaching its conclusion, the court in *Garnica* also discussed jurisprudence focusing on the MMA's definition of "patient" and "health care." Likewise, in the instant matter, to assert a claim in medical malpractice against Park Place, Mrs. Derouen must be a "patient" who either did receive, or who should have received,

---

[2]Louisiana Revised Statutes 40:1299.39 entitled "Malpractice Liability for State Services" governs malpractice claims brought against a qualified "State health care provider." La.R.S. 40:1299.39(A)(1)(a). The terms defined in La.R.S. 40:1299.39 do differ somewhat from those defined in La.R.S. 40:1299.41; however, the difference is immaterial and inconsequential to the instant case.

"health care." However, Mrs. Derouen's claims against Park Place are grounded in its failure to notify her of the recall of the device which, undisputedly, was not made until thirty-five days after her discharge. Therefore, the basis of her assertions do not involve "health care" she received at Park Place, since its failure to notify her did not occur "during the patient's medical care, treatment or confinement." La.R.S. 40:1299.41(A)(9). Thus, Mrs. Derouen's status as a "patient" and her receipt of "health care" under the MMA is lacking.

Our supreme court has provided us with six factors, now referred to in the jurisprudence as the *Coleman* factors, for purposes of analyzing whether particular claims being asserted constitute "malpractice." *Coleman v. Deno*, 01-1517, 01-1519, 01-1521, (La. 1/25/02), 813 So.2d 303. *See, e.g., Blevins v. Hamilton Med. Ctr.*, 07-127 (La. 6/29/07), 959 So.2d 440; *Williamson*, 888 So.2d 782. The six *Coleman* factors are as follows:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
>
> (3) whether the pertinent act or omission involved assessment of the patient's condition;
>
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
>
> (5) whether the injury would have occurred if the patient had not sought treatment; and
>
> (6) whether the tort alleged was intentional.

*Lacoste*, 966 So.2d at 525 (citing *Coleman*, 813 So.2d 303). We will address each of these factors as they relate to the instant case.

7

**Is the particular wrong treatment related?**

As emphasized throughout this opinion, Mrs. Derouen's claims are based upon Park Place's failure to notify her of the manufacturer's subsequent recall of the patch. While the insertion of the patch in the course of her surgery was related to the treatment that she received at Park Place, its failure to notify is not "treatment related." Rather, as characterized by Mrs. Derouen, "it is a violation of a clerical or ministerial duty." *See Garncia*, 744 So.2d 156.

This court, in *Nash v. Brown*, 04-751, p. 1 (La.App. 3 Cir. 3/16/05), 898 So.2d 619, 620, considered a similar issue involving an "alleged delay in performing administrative duties[.]" In discussing the "treatment related" factor, this court stated, in *Nash*, that the plaintiff "does not allege negligence in the professional services rendered by defendants. Rather, plaintiff argues that defendants were negligent in performing the ministerial aspects of their practice after they competently exercised professional skill." *Id.* at 623. Analogous to *Nash*, while the insertion of the patch during Mrs. Derouen's surgery "was treatment in and of itself, and required professional skill," the failure to notify of a recall which occurred thirty-five days subsequent to that treatment is not. *Id.*

**Is expert testimony required to determine whether there was a breach of the standard of care?**

Another factor to be considered is whether the present claims will require the introduction of expert medial testimony on the breach of the standard of care by Park Place. As the court in *Garnicia*, 744 So.2d at 160, stated, "the determination of whether the hospital was liable based on the alleged failure to properly inform the patient of the defective [device] does not require expert medical testimony." Additionally, as we recognized in *Nash*, 898 So.2d at 623, "[w]e see no way that

8

'expert medical evidence' could have any bearing on whether defendants were adequately diligent in the performance of administrative duties . . . ." Rather, "[t]he standard of care simply does not pertain to medical issues. The parties will undoubtedly employ medical testimony to demonstrate the physical effect of the delay in treatment; however, it is not required to determine whether the delay itself was negligent." *Id.* Given the nature of the claims asserted in the instant matter, we likewise conclude that Mrs. Derouen's claims do not require an expert medical opinion on whether Park Place's failure to notify was a breach of the standard of care.

**Is the assessment of the patient's condition involved?**

As discussed above, given the facts of this case, Mrs. Derouen was not a "patient" of Park Place at the time of the manufacturer's recall of the patch. Thus, her allegations of Park Place's failure to notify her of the recall, which occurred thirty-five days after the patch was installed, obviously did not involve an assessment of her condition, since she was no longer admitted at its facility.

**Is the incident within the scope of activities which a hospital is licensed to perform?**

At the time of the recall, Mrs. Derouen was no longer a patient receiving medical treatment at Park Place. Consequently, we reiterate the fact that Park Place's alleged failure to notify, given its occurrence thirty-five days after her admission at the facility, was not within the scope of activities the hospital is licensed to perform.

**Would the injury have occurred if the patient had not sought treatment?**

Obviously, the implantation of the allegedly defective patch occurred as a result of Mrs. Derouen's medical treatment which required surgery. However, she underwent the surgical procedure which included an implantation of the device prior to its recall. Her alleged "injury" resulted from the *delay* which occurred subsequent

9

to her hospitalization and before she learned of the manufacturer's recall of the device after her discharge. Thus, we agree with her assertion that "the fact that the patient had sought treatment would not have affected the tort which was committed later, after the patient was discharged, by the hospital's receiving notice of the recall but failing to notify the patient or her physicians of the recall."

**Is the tort alleged an intentional tort?**

Mrs. Derouen's petition does not allege an intentional tort on the part of Park Place. Therefore, this factor is not a consideration in our analysis as to whether Mrs. Derouen's claim constitutes medical malpractice.

Having applied the express definitions contained within the MMA and the jurisprudence interpreting same, including due consideration of the *Coleman* factors as instructed by our supreme court, we conclude that the claims of Mrs. Derouen asserted against Park Place do not fall within the ambit of the MMA. Consequently, Mrs. Derouen was not required to first submit her claims to a medical review panel prior to instituting the instant litigation. For these reasons, we reverse the judgment of the trial court granting the exception of prematurity in favor of Park Place.

### DECREE

The judgment of the trial court granting the exception of prematurity in favor of Defendants, Park Place Surgery Center, LLC, and Our Lady of Lourdes Regional Medical Center, and dismissing the claims of Plaintiffs, Tina Derouen and her spouse Howard Derouen, III, is hereby reversed. All costs of these proceedings are assessed against Defendants, Park Place Surgery Center, LLC, and Our Lady of Lourdes Regional Medical Center.

**REVERSED.**