539 So.2d 911 (1989)
Willie B. HARRISON
v.
Thomas W. PHILLIPS, Cloverleaf Bakeries, Inc., and the City of New Orleans and Officer W. Murray.
No. 88-CA-1458.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 1989.
Writ Denied April 21, 1989.
Bernard J. Williams, Duplass, Witman & Zwain, Metairie, for appellees Thomas W. Phillips and Cloverleaf Bakeries, Inc.
Roger B. Jacobs, New Orleans, for appellant.
Okla Jones, II, City Atty., Brett J. Prendergast, Asst. City Atty., George V. Perez, Jr., Val K. Scheurich, III, Deputy City Attys., Don J. Hernandez, Chief Deputy City Atty., New Orleans, for appellees City of New Orleans and William Murray.
Before BYRNES, LOBRANO and WARD, JJ.
LOBRANO, Judge.
Willie B. Harrison sued Thomas Phillips, Cloverleaf Bakeries, Officer William Murray and the City of New Orleans[1] to recover damages arising out of Harrison's alleged false arrest and imprisonment. From the trial court judgment dismissing his claim, Harrison perfects this appeal.
The record evidences the following facts. On June 12, 1985, Thomas Phillips, part owner and executive of Cloverleaf Baking Company, arrived at work around 9:00 a.m. *912 He discovered that $1,400.00 of $1,800.00 which he had placed in an envelope in his locked desk drawer the previous evening was missing.
The bakery has three office areas. One area is a lunchroom accessible to all employees. Adjacent to the lunchroom is an area designated at trial as office one. There is a door from the lunchroom to this office. Also, in the common wall between the lunchroom and office one, is an open window space big enough for a person of Harrison's size to crawl through. A desk in office one contained numerous keys, including those to the coke machine and the time clock. An iron gate separated office one from office two which contained the desk from which the money was taken.
Upon discovery of the missing cash, Phillips summoned the police. Officer Leo Bougeois responded to the call and conducted an investigation. There were no signs of forced entry. The door and gate to both offices, and the desk drawer in office two, were locked. Phillips informed the officer that, besides himself, only Ross, also an owner of the bakery, and Ross's son had keys to the offices. The only other person with access to the offices was Harrison who was employed as the porter. Officer Bougeois took the torn, smudged envelope which had contained the money as evidence in order to check for possible finger prints. The smudge appeared to be a rubber glove print. At this time Harrison was not interrogated as he was unavailable.
Phillips testified that there were approximately twenty five keys in the desk drawer in office one. Some of those keys were kept in marked envelopes and some were not. The key to the coke machine and the key to the time clock were missing. Phillips was not sure if a key to the iron gate was also in the desk drawer, but testified it could have been. The evidence shows that $50.00 was missing from the drink machine box and the time clock had been advanced two hours by someone using a key.
On June 15, three days later, Phillips received a replacement time clock key. He noticed that that key also fit the desk drawer which had contained the missing money. Phillips surmised that whoever tampered with the time clock had taken the money. Phillips summoned Harrison to his office.
According to Phillips, he told Harrison that if the money were returned, he would be fired but the police would not be called. Harrison denied taking the money. Phillips admitted he was aggravated and he put his hand on Harrison's shoulder when Harrison insisted he was innocent. Phillips left Harrison sitting in his office. He went through the iron gate to the other office to call the police. He admits slamming the gate, but denies that it was locked.
The police radioed the following message to Officer William Murray's patrol car, "15 holding 62B" which means "citizen holding burglary suspect."
Within ten minutes, Officer Murray arrived at the bakery. He noticed Harrison sitting in Phillips' office with the gate closed. The officer did not know if the gate was locked.
Murray questioned Phillips and determined the following:
(1) Harrison had access to the area as a porter and was alone in that area during the early morning hours of the 12th;
(2) Harrison used gloves to perform his work;
(3) The crime lab had lifted a potential print from the envelope that came from a rubber glove;
(4) Harrison was the only employee to use the time clock;
(5) The time clock was set two hours ahead;
(6) Harrison's time card had not been clocked on that morning;
(7) The key to the time clock was missing; and
(8) The key to the time clock also fit the desk.
A second officer arrived at the bakery while Phillips was talking to Officer Murray. The second officer escorted plaintiff away from office two and conversed with him.
After the conversation between Phillips and Murray, Murray questioned plaintiff.
*913 Subsequently, Murray handcuffed and drove him to the second district police building. He was subsequently transported to Central Lock-Up.
Plaintiff was jailed on June 15, 1985 and remained in jail because he was unable to post bond.
The crime lab subsequently reported that the print on the envelope was not identifiable. The police then recommended that the district attorney refuse the charges, which that office subsequently did. After refusing the charges, the plaintiff was released from jail after being incarcerated for fifty four days.
According to plaintiff, the confrontation with Phillips was much more violent. He testified that Phillips accused him of the burglary, and slapped him twice in the face when he denied committing the crime. Plaintiff also indicated that Phillips not only slammed the iron gate but locked it when he went to call the police.
The trial court held that the City and Officer Murray had probable cause to arrest plaintiff. In his reasons for judgment, the trial judge enumerated the factors which substantiated his findings. And, although no reasons were given for dismissing the claim against Phillips and the Bakery, it is clear the court found that plaintiff failed to prove the elements of a false imprisonment claim.
Plaintiff appeals asserting: (1) the trial court erred in failing to find that Phillips "falsely imprisoned" plaintiff and/or that he instigated plaintiff's false arrest; (2) the trial court erred in finding that Officer Murray had probable cause to arrest plaintiff.
All parties to this litigation basically agree on the legal elements of false imprisonment and arrest, and thus the real issue for our review is a factual one. We must determine if the trial court is clearly wrong in its factual determinations, and whether there is error in its application of those facts to the law.
FALSE IMPRISONMENT CLAIM AGAINST THE BAKERY
Plaintiff asserts his claim against the Bakery under two theories. First, he argues that there was an actual arrest and/or imprisonment by Phillips, the vice-president of the Bakery. Second, he argues that Phillips instigated or procured a false arrest by the police which also constitutes a false imprisonment or arrest of him.
False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Kyle v. City of New Orleans, 353 So.2d 969, 971 (La.1977); Kabir v. City of Lafayette, 509 So.2d 464 (La.App. 3rd Cir.1987).
La.Code of Criminal Procedure Article 214 provides:
"A private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence."
"An arrest is made when one person is taken into custody by another and there is an actual restraint of the person." State v. Giovanni, 375 So.2d 1360 (La.1979), at 1363. The circumstances must indicate an intent to effect an extended restraint on the liberty of the accused. State v. Sherer, 354 So.2d 1038 (La.1978). The seizure of a person, as described in United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and cited by plaintiff, is whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."
In the instant case plaintiff must prove by a preponderance of the evidence that he was actually detained, or such circumstances as would lead a reasonable person to believe he was not free to leave and that such detention was unlawful. See, Vincent v. State through Department of Corrections, 468 So.2d 1329 (La.App. 1st Cir. 1985), writ denied, 472 So.2d 34 (La.1985), concurring opinion and cases cited therein. Plaintiff relies on his own testimony. He testified that on the morning of his arrest by Officer Murray, Phillips confronted him in an agitated state and accused plaintiff of committing the theft. According to plaintiff, Phillips pushed and slapped him. Phillips *914 denied this but did admit putting a hand on plaintiff's shoulder. Plaintiff testified that when he refused to admit responsibility for the crime, Phillips slammed the iron gate to the office and went to call the police.
Phillips admitted that he was agitated but denied he locked the gate. He also testified that the plaintiff came willingly to his office. Officer Murray testified that, although plaintiff was seated in the office when he arrived, he could not remember if the gate was locked. There is no other evidence to suggest that plaintiff was not free to leave, or that his liberty was restrained. However plaintiff argues that because Phillips had called the police he was prevented from leaving since to do so "would cast further suspicion against him." We disagree. This rationale would lead to the somewhat questionable precedent that whenever a complaint is made to the police the accused could claim false imprisonment. This is simply an unacceptable principle. The law encourages the lay person to cooperate with enforcement authorities.
We conclude that plaintiff failed to prove a detention by Phillips. Although Phillips admitted being agitated, he did not tell plaintiff he could not leave. The evidence is contradictory on whether the iron gate was locked, and the fact that the police were summoned does not suggest plaintiff could not leave. Clearly, this issue was a credibility call by the trial judge and we do not find manifest error.
Plaintiff further argues that Phillips procured or instigated his arrest and thus is legally responsible for his damages. The thrust of this argument is that the Bakery was at "fault" for the false arrest and imprisonment of plaintiff. However, in order for plaintiff to recover damages for the Bakery's alleged fault in causing or procuring his arrest, plaintiff must prove that his arrest was indeed illegal or false. This determination must be made after review of Officer Murray's actions which also encompasses plaintiff's argument that the City is liable.
PROBABLE CAUSE BY OFFICER MURRAY TO ARREST
It is undisputed that Officer Murray arrested plaintiff without a warrant. Article 213 of the Code of Criminal procedure provides in part:
"A peace officer may, without a warrant, arrest a person when ... (3) the peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;"
The trial court, relying on the rule enunciated in Johnson v. State Through Department of Public Safety of Louisiana, 451 So.2d 104 (La.App. 3rd Cir.1984), writ denied, 457 So.2d 15 (La.1984), held that Officer Murray had reasonable cause to arrest plaintiff.
"Reasonable cause to believe the person arrested has committed an offense exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in the belief that the person to be arrested has committed or is committing an offense." Id. at 108

The reasonableness of the arresting officer's belief is a substantive determination made in the first instance by the trial judge. Johnson v. State, supra. The law, however, does not require that "reasonable cause to arrest" be established by evidence sufficient to convict. The arresting officer need not be convinced beyond a reasonable doubt of the guilt of the arrested person. State v. Weinberg, 364 So.2d 964 (La.1978). The degree of proof is a lesser degree than that needed to convict. State v. Winfrey, 359 So.2d 73 (La.1978). "When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime." State v. Johnson, 363 So. 2d 684 (La.1978) at 689.
In the instant case, the trial court based its conclusion upon the following factors testified to by Officer Murray: (1) plaintiff had access to the area as a porter; (2) *915 plaintiff used gloves to perform his work and that there appeared to be a smudge print on the envelope which contained the missing money; (3) plaintiff was the only employee to use the time clock which had been set two hours ahead; (4) plaintiff's time card had not been clocked in that morning and (5) the key to the time clock also fit the key to the desk where the money was located.
Our review of the evidence substantiates the trial court's factual conclusions. Plaintiff argues that Officer Murray failed to question other people who were present, including Phillips' business partner. He also points out that Officer Murray should have known that the smudge print on the envelope appeared to be from a glove and thus there would be no way of matching it to the fingerprint of plaintiff. Plaintiff urges that Officer Murray's beliefs were purely speculative and had no basis in fact. We disagree.
As we previously noted, Officer Murray is not required to possess sufficient evidence to convict, only a reasonable probability (greater than mere suspicion) that plaintiff committed a crime. Officer Murray knew a crime had been committed. In addition, he had a reliable source of information namely, Phillips. Unlike State v. McDonald, 503 So.2d 535 (La.App. 4th Cir. 1987) and State v. Rose, 503 So.2d 499 (La.App. 4th Cir.1986), relied on by plaintiff, there is no confidential informant in this case. The trial court had the opportunity to hear and determine the credibility of the information source, Phillips. The information consisted of a theft without any signs of forcible entry. The perpetrator had to have access to a key. The same key that fit the time clock also fit the desk where the money was located. The time clock key was located in an unlocked desk in office No. 1. Plaintiff was the only employee to use the time clock. Although the door to office No. 1 may have been locked there was a "window space" opening from the lunchroom area into office No. 1. Plaintiff is a person of small stature who could easily climb through that window. There was a probability that one of the many keys locateed in Office No. 1 desk fit the iron gate to Office No. 2. Plaintiff worked with gloves, and there appeared to be a glove smudge print on the envelope from which the money was taken.
Given these facts and circumstances, we cannot say the trial court committed manifest error in finding there was probable cause to arrest plaintiff. And, any instigation by Phillips to have plaintiff arrested does not create liability on his part because the arrest was not a "false arrest".
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Harrison also originally sued the office of the District Attorney. Because of immunity, this defendant was dismissed from the suit prior to trial.