668 So.2d 415 (1996)
Rachel F. PRISK
v.
M. Carmen PALAZZO, St. Jude Medical Center and American Medical International A/K/A AMI.
No. 95-CA-1475.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1996.
Writ Denied April 8, 1996.
*416 William W. Shaw, Jr., Blue Williams, L.L.P., Metairie, for Appellants St. Jude Medical Center and American International a/k/a AMI.
Terry Christovich Gay, Christovich & Kearney, New Orleans, for Appellant M. Carmen Palazzo, M.D.
Vance E. Ellefson, Markle & Daly, APLC, New Orleans, for Appellee.
Before BYRNES, LOBRANO and MURRAY, JJ.
LOBRANO, Judge.
Ordinarily, an appeal is not permitted from an interlocutory decree. La.C.C.Pro. Art. 2083. However, where irreparable injury may occur, a direct appeal is permitted. Id. Appellants perfect the instant appeal from the trial court's denial of their exception of prematurity. Inasmuch as we determine that irreparable injury would result without appellate review, we entertain this appeal. See, Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La.App. 1st Cir.1979).
The issue presented by this appeal is whether plaintiff's suit falls within the scope of the Medical Malpractice Act so as to afford defendant review by a medical review panel as provided in La.R.S. 40:1299.47. As a peripheral issue, appellants complain that the trial judge erred, as a matter of law, by failing to consider the evidence submitted to support their exception.

FACTS:
Plaintiff, Rachel F. Prisk, sued Dr. Carmen Palazzo and St. Jude Medical Center alleging that they falsely imprisoned her for a period of eight days during which time she suffered "physical and mental injury, humiliation, embarrassment and damage." Plaintiff specifically alleges that "[she] was caused to go to St. Jude under false pretenses."
Dr. Palazzo and St. Jude, appellants, filed an exception of prematurity asserting that the relief sought by plaintiff fell within the parameters of the Medical Malpractice Act, (the Act) and that submission to a medical review panel was required before plaintiff instituted suit. In support of their exception, appellants introduced into evidence plaintiff's medical records for her eight days at St. Jude, as well as certificates of enrollment certifying that they are qualified under the Medical Malpractice Act.
In his reasons for denying appellants' exception of prematurity the trial judge indicated that according to the "four corners" of plaintiff's petition, no negligent acts are alleged, only the intentional tort of false imprisonment. The court reasoned that "in a medical malpractice [action], you cannot do that. You cannot do that because, by definition, it is a negligent act that is [sic] a healthcare provider performs or failed to perform."
Appellants initially argue that the trial court was in error in failing to consider the evidence, particularly the medical records, introduced in support of their exception. They assert that despite the allegations of plaintiff's petition, the evidence substantiates that her cause of action is medical malpractice, as defined by the Act.
To the extent that the trial judge concluded, as a matter of law, that evidence beyond the petition could not be considered, that was error. La.C.C.Pro. art. 930. However, our impression after reviewing the entirety of his reasons, is that the court did consider all the evidence. His conclusion was that appellants' evidence was relevant to the merits of the case, but not the exception of prematurity.
The real issue in this case is whether the plaintiff's plea of being held at St. Jude against her will, and the alleged humiliation associated with that confinement, falls within *417 the definition of malpractice.[1] Louisiana Revised Statute 40:1299.41 A(8) provides:
"(8) `Malpractice' means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient."
"Tort" and "health care" are further defined in R.S. 40:1299.41 A(7) and (9) as follows:
"(7) `Tort' means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
* * * * * *
(9) `Health care' means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement."
The principal purpose of the Act is to limit the liability of qualified health care providers. Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992). The Act's limitations on the liability of health care providers are special legislation in derogation of the rights of tort victims, and as such, the Act's coverage should be strictly construed. Id. In Sewell, our Supreme Court concluded that the plaintiffs' strict liability claim for a defective hospital bed was not covered by the Act. In Jure v. Raviotta, 612 So.2d 225 (La.App. 4th Cir.1992), writ denied, 614 So.2d 1257 (La. 1993) this Court concluded that the defendant doctor's sexual misconduct with his patient was not malpractice as defined by the Act. We noted that:
"[A] review of the Louisiana jurisprudence clearly shows that the Act does not encompass every tort claim arising as a consequence of a physician/patient relationship. Rather, the definition of malpractice includes only an unintentional tort based on health care or professional services rendered." at 228.
Initial impression would suggest that Jure is dispositive. However, closer observation shows the fallacy of that impression with respect to the facts of the instant case.
The basis of plaintiff's argument is that her claim of false imprisonment is an intentional tort. In support she cites Louisiana Revised Statute 14:46, the definition of false imprisonment for criminal purposes.[2] That statute has no relevance in this civil proceeding. The civil cause of action for false imprisonment requires proof of restraint without color of legal authority. Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977); Harrison v. Phillips, 539 So.2d 911 (La.App. 4th Cir.1989), writ denied, 541 So.2d 894 (La.1989). There is no requirement of proving that the confinement be intentional. For example, in Barry v. Dennis, 93-1301 (La.App. 4th Cir. 2/25/94), 633 So.2d 806, writ denied, 94-0708 (La. 4/29/94), 637 So.2d 468, the plaintiff's argument was based on the City's negligent investigation of the incident which led to his incarceration. Although unsuccessful in that argument, there was no necessity for plaintiff to prove his confinement was intentional.
Therefore, to the extent plaintiff relies on the theory that her claim of false imprisonment is an intentional tort and thus excluded from the Act, that argument lacks merit. More important, however, is our conclusion, based on the following review of *418 Louisiana's Mental Health Law, that confinement for purposes of treatment falls within the definition of health care.
Plaintiff specifically alleges her false imprisonment was a violation of Louisiana's Mental Health Laws. Part III of Chapter 1 of Louisiana's Mental Health Law is entitled: "Examination, Admission, Commitment, and Treatment of Persons Suffering From Mental Illness and Substance Abuse." One of the stated policies of Part III is "[t]hat mentally ill persons and persons suffering from substance abuse be encouraged to seek voluntary treatment." La.R.S. 28:50(1). Any person seeking admission to a treatment facility under the admission procedures authorized by the mental health law shall be received by that facility, subject to availability of accommodations. La.R.S. 28:51. Voluntary admission to a treatment facility is authorized on a formal or informal basis. La.R.S. 28:52. Revised Statute 28:52.2 authorizes a formal voluntary admission and provides as follows:
"A. Any mentally ill person or person suffering from substance abuse desiring admission to a treatment facility for diagnosis and/or treatment of a psychiatric disorder or substance abuse and who is deemed suitable for formal voluntary admission by the admitting physician may be so admitted upon his written request.
B. A patient admitted under the provisions of this Section shall not be detained in the treatment facility for longer than seventy-two hours after making a valid written request for discharge to the director unless an emergency certificate is executed pursuant to R.S. 28:53, or unless judicial commitment is instituted pursuant to R.S. 28:54 after making a valid written request for discharge to the director of the treatment facility."
The medical records filed in evidence contain a "Request For Voluntary Admission" executed by plaintiff on January 27, 1994, an "Acknowledgement of Notification of Rights" executed the same day, and a "Seventy Two Hour Notice of Release" executed January 30, 1994, but rescinded on February 2, 1994.
Plaintiff does not deny that she executed those documents. However, she does allege that she was admitted under false pretenses. In her affidavit she states that Dr. Palazzo was not her physician and that she had no desire to be treated by her. Thus, plaintiff asserts, the arguments and evidence submitted by appellants are directed to the merits of the case rather than whether her action is covered by the Malpractice Act. Admittedly, the evidence submitted by appellants will necessarily be used in their defense on the merits, however, it is also relevant in determining the applicability of the Act.
Louisiana's Mental Health Law contemplates confinement in a treatment facility as the initial step in the examination and treatment of persons suffering from substance abuse or mental illness. Unlike other illnesses, the Mental Health Law imposes special duties on physicians and hospitals before confining a patient for treatment. Those statutory duties are the standards which physicians and hospitals must adhere to in the initial stages of treatment. We hold that any breach of that standard of care is medical malpractice as defined in the Act.
Accordingly, the trial court judgment is reversed, appellants' exception of prematurity is maintained and plaintiff's suit is dismissed without prejudice.
REVERSED AND RENDERED.
NOTES
[1] It is undisputed that appellants are qualified health care providers as defined in the Act.
[2] The crime of false imprisonment requires an intentional confinement without legal authority.