DEVIN TUCKER

VERSUS

SEASIDE BEHAVIORAL CENTER, LLC;
EAST JEFFERSON GENERAL HOSPITAL

NO. 23-CA-132

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 829-149, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING

December 27, 2023

**FREDERICKA HOMBERG WICKER
JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

**<u>REVERSED AND REMANDED</u>**
    **FHW**
    **SMC**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
DEVIN TUCKER
      Adrian M. Simm, Jr.
      Lance C. Unglesby
      Jamie F. Gontarek
      Lewis O. Unglesby

COUNSEL FOR DEFENDANT/APPELLEE,
SEASIDE BEHAVIORAL CENTER, LLC
      Guice A. Giambrone, III
      Ivana Dillas

COUNSEL FOR DEFENDANT/APPELLEE,
EAST JEFFERSON GENERAL HOSPITAL
      Brett M. Dupuy
      Jean-Paul J. Morrell

**WICKER, J.**

Plaintiff appeals the trial court's judgments sustaining the dilatory exceptions of prematurity filed by defendants and dismissing his claims against them without prejudice. For the following reasons, we reverse both judgments and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On June 10, 2022, plaintiff, Devin Tucker, filed this lawsuit against defendants, Seaside Behavioral Center, L.L.C. ("Seaside") and East Jefferson General Hospital ("EJGH"), for damages sustained on December 25, 2020, when he jumped from a third-floor window at EJGH while under the care of Seaside and EJGH. In his petition, Mr. Tucker asserts that he suffers from schizophrenia and bipolar disorder, and that he suffered a psychotic breakdown on December 16, 2020. He provides that the Jefferson Parish Coroner's Office ordered him to be brought to EJGH for a psychiatric examination, and he was placed on a "10-day hold." According to Mr. Tucker, after he arrived at EJGH and was evaluated, he was transferred into the care of Seaside, which is a behavioral health center "housed in and run by EJGH." Mr. Tucker asserts that on Christmas morning, he was able to completely open the window in his hospital room, and he attempted to escape by jumping from the window to the ground three stories below.

In his petition, Mr. Tucker alleges that the grievous injuries he sustained were caused by the negligence, fault, and/or strict liability of Seaside and EJGH. He contends that he was in the custody and control of Seaside and/or EJGH at the time of the incident, and that their failure to properly maintain the window created a foreseeable and unreasonably dangerous condition. Mr. Tucker asserts that Seaside and EJGH were negligent in failing to have locks or some type of restraint on a third-floor window of a psychiatric unit, where individuals are committed against their will. He also claims that Seaside and EJGH failed to maintain an

adequate staff of properly trained personnel in the psychiatric unit. Mr. Tucker alleges that none of his allegations are medical malpractice claims, because they do not relate to his treatment or the judgment of a medical professional.

On July 18, 2022, Seaside filed a dilatory exception of prematurity, asserting that it is a qualified health care provider under the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1231.1, *et seq.*, and that Mr. Tucker's claims against it are based on allegations of medical malpractice. Seaside argued that Mr. Tucker's lawsuit must be dismissed without prejudice, because he failed to bring his claims before a medical review panel prior to filing this lawsuit, as required by La. R.S. 40:1231.8(A)(1). In support of its exception, Seaside attached a document from the Louisiana Patient's Compensation Fund ("PCF") certifying that Seaside was a qualified health care provider at the time of the incident.

On August 15, 2022, Mr. Tucker filed a memorandum in opposition to Seaside's exception of prematurity, stating that he does not dispute that Seaside is a qualified healthcare provider under the LMMA, but this fact alone is insufficient to show that his claims arise from medical malpractice. He argued that his claims are not related to any medical treatment and therefore, do not fall under the LMMA. Seaside filed a response on August 18, 2022, maintaining that Mr. Tucker's claims arise from medical malpractice, because this case involves complex medical questions regarding the medication and proper monitoring necessary for a schizophrenic patient and the risk he posed to himself or others.

Seaside's exception of prematurity came for hearing before the trial court on August 23, 2022. After considering the arguments of counsel, the trial court sustained the exception and dismissed Mr. Tucker's claims against Seaside without prejudice. The court signed a written judgment to this effect on September 1, 2022.

Thereafter, on September 15, 2022, EJGH filed a dilatory exception of prematurity, asserting that it is a qualified health care provider and that Mr. Tucker's claims against EJGH were treatment-related and caused by dereliction of professional skill. Therefore, it argued that the claims against it arise from medical malpractice and are subject to the provisions of the LMMA. EJGH, like Seaside, attached a document from the PCF certifying that it was a qualified health care provider.

On October 19, 2022, Mr. Tucker filed a memorandum in opposition to EJGH's exception, asserting that his claims against EJGH were not treatment-related, because he did not receive any psychiatric treatment or other medical care from EJGH after he was transferred to the care of Seaside. Mr. Tucker argued that his claims against EJGH arose from the acts of its administrators in failing to properly maintain the third-floor hospital room window on its premises and failing to protect Mr. Tucker from the dangerous condition created by allowing the unsecured window to be fully opened on the third floor of the hospital psychiatric unit. Mr. Tucker attached his medical records to his memorandum in opposition to EJGH's exception of prematurity. EJGH filed a reply memorandum on October 24, 2022, stating that Mr. Tucker's claims against EJGH are identical to those against Seaside and thus, EJGH is entitled to have the claims against it dismissed as premature, just as Seaside did.

A hearing on EJGH's exception of prematurity was held on October 27, 2022. At the conclusion of the hearing, the trial court sustained EJGH's exception. On November 28, 2022, the court signed a written judgment granting the exception of prematurity and dismissing Mr. Tucker's claims against EJGH without prejudice. Mr. Tucker appeals both the September 1, 2022 and November 28, 2022 judgments.

**LAW AND DISCUSSION**

On appeal, Mr. Tucker argues that the trial court erred by granting defendants' exceptions of prematurity and finding that his claims, which arise from general negligence, administrative decisions, and premises liability, are subject to the LMMA. He contends that the trial court failed to strictly construe the provisions of the LMMA to his claims against Seaside and EJGH. Mr. Tucker further argues that even if the trial court had properly found that one or some of his claims sound in medical malpractice, the trial court should have severed any claims that could fall under the LMMA. Finally, Mr. Tucker contends that the trial court erred when it refused to consider his medical records attached to and filed in support of his opposition to EJGH's exception of prematurity.

A dilatory exception of prematurity questions whether a cause of action has matured to the point where it is ripe for judicial determination. *Perry v. State Farm Mutual Automobile Insur. Co.*, 16-418 (La. App. 5 Cir. 12/14/16), 209 So.3d 308, 311; *Spradlin v. Acadia-St. Landry Med. Found.*, 98-1977 (La. 2/29/00), 758 So.2d 116, 119. When an exception of prematurity is pled in the medical malpractice context, the burden of proving prematurity is on the exceptor, who must show that it is entitled to a medical review panel because the allegations fall within the LMMA. *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-008 (La. 9/5/07), 966 So.2d 519, 523; *Perry*, 209 So.3d at 311. Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. La. R.S. 40:1231.8(B)(1)(a)(i); *Williamson v. Hospital Service Dist. No.1 of Jefferson*, 04-451 (La. 12/1/04), 888 So.2d 782, 785.

Appellate courts conduct a *de novo* review of a trial court's ruling sustaining a dilatory exception of prematurity, because the issue of whether a claim sounds in medical malpractice involves a question of law. *Matherne v. Jefferson Parish Hospital Dist. No. 1*, 11-1147 (La. App. 5 Cir. 5/8/12), 90 So.3d 534, 536, *writ*

*denied*, 12-1545 (La. 10/12/12), 98 So.3d 873.  Where, as here, no evidence is introduced at the trial of a dilatory exception of prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true.  *LaCoste*, 966 So.2d at 525.

Mr. Tucker contends that the trial court erred by refusing to consider his medical records, which were attached to his opposition memorandum, when ruling on EJGH's exception of prematurity.  At the hearing, counsel for both parties referred to the medical records during their argument.  Thereafter, the trial court indicated that it was "bound by the four corners of the petition in addressing the exception" and could not consider evidence.  However, La. C.C.P. art. 930 provides that on the trial of a dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.  Although the trial court erroneously provided that it could not consider evidence, this error is of no moment in this case, where the record reflects that neither Mr. Tucker nor defendants moved to introduce any exhibits at the hearings.

In *Denoux v. Vessel Management Services, Inc.*, 07-2143 (La. 5/21/08), 983 So.2d 84, 88, the Louisiana Supreme Court held that "evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered."  Accordingly, because no evidence was properly offered and introduced at the hearings on the exceptions, we must render our decision on the exception of prematurity based solely upon the facts as alleged in the petition, accepting all allegations therein as true. [1]

---

[1] At the hearing on Seaside's exception of prematurity, counsel for Seaside stated, "I would like to offer, file and introduce my exhibits into the record."  Counsel for Mr. Tucker indicated he had no objection, and the trial court replied that the exhibits were admitted.  However, the transcript does not reflect that any specific exhibits were identified.  The record shows that Seaside attached a document to its exception of prematurity indicating that it is a qualified health care provider.  In the event Seaside intended to

In Mr. Tucker's petition, he sets forth the same claims against both defendants, Seaside and EJGH. He asserts that defendants had custody and control over him at the time of the incident and are liable for his damages, which occurred as a result of their negligence, fault, and strict liability. The petition sets forth specific allegations against defendants as follows:

1. Permitting said premises and/or areas to be maintained in a negligent and improper manner;

2. Failing to maintain and/or repair aforesaid premises and/or areas;

3. Failing to warn Petitioner of the hazardous condition existing at said premises;

4. Failing to see and take proper precautions against what should have been seen and precautioned against;

5. Failing to discover and protect petitioner against the dangerous condition and risk created by the dangerous condition of said defect;

6. Failing to remedy a defective condition of which defendants had actual or constructive notice, despite a reasonable opportunity to do so;

7. Operating a premises which contained an unreasonable hazard;

8. Failing to maintain the window in Mr. Tucker's hospital room in a proper manner to prevent escape;

9. Failing to place protective screens or bars over the psychiatric unit windows so as to prevent Mr. Tucker from being able to jump out of the window in an attempt to escape; and

10. Failing to maintain an adequate staff of properly trained personnel in the psychiatric unit.

The LMMA's limitations on tort liability for a qualified health care provider apply only to claims arising from medical malpractice, as defined in the LMMA itself, while all other tort liability on the part of the qualified health care provider is governed by general tort law. *Blevins v. Hamilton Medical Center, Inc.*, 07-127 (La. 6/29/07), 959 So.2d 440, 444. Because the LMMA is special legislation in derogation of the general rights of tort victims, any ambiguities in the LMMA must

_____

introduce this document, we point out that the parties do not dispute that Seaside is a qualified healthcare provider.

be strictly construed against coverage. *Id.*; *Price v. City of Bossier City,* 96-2408 (La. 5/20/97), 693 So.2d 1169, 1172.

"Malpractice" is defined in La. R.S. 40:1231.1(13), as:

> any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

In *Coleman v. Deno,* 01-1517 (La. 1/25/02), 813 So.2d 303, the Louisiana Supreme Court set forth a six-part test to determine whether certain conduct by a qualified health care provider constitutes medical malpractice, as defined in the LMMA. *Williamson*, 888 So.2d at 786. The *Coleman* factors include: 1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; 2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; 3) whether the pertinent act or omission involved assessment of the patient's condition; 4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; 5) whether the injury would have occurred if that patient had not sought treatment, and 6) whether the tort alleged was intentional. *Id.* at 786-787.

In order to determine whether or not Mr. Tucker's claims arise from medical malpractice and are subject to the provisions of the LMMA, we consider the allegations of the petition, along with the definition of malpractice in La. R.S. 40:1231.1(13), and apply the *Coleman* factors thereto.

The first *Coleman* factor considers whether the particular wrong is treatment-related or caused by a dereliction of professional skill. Mr. Tucker argues that his claims do not arise from a failure to render medical treatment or services. Rather, they arise from defendants' failure to properly maintain the premises over which it had care, custody, and control, and their failure to warn or protect him from the dangerous condition on the premises, *i.e.* an unlocked and unsecured window on the third floor of a psychiatric ward. He further asserts that his claims are based on the actions of the administrators of Seaside and EJGH by allowing a dangerous or defective condition to remain on the premises without any warning and failing to provide an adequate staff of properly trained personnel in this psychiatric unit.

Defendants respond that Mr. Tucker's claims relate to his medical treatment, because he would not have attempted to escape via the hospital's third floor window if he did not suffer from schizophrenia and bipolar disorder. They also contend that his claims of inadequate staff directly relate to his condition and are intricately connected to his evaluation and confinement.

In considering the first *Coleman* factor, our review of the jurisprudence reveals that the Louisiana Supreme Court's opinion in *Lacoste*, *supra*, is instructive. In *Lacoste*, 966 So.2d at 522-522, the plaintiffs brought wrongful death and survival actions against a hospital alleging negligent and intentional conduct of the defendant in 1) designing, constructing and/or maintaining a facility in such a manner that the hospital did not have sufficient emergency power to sustain life support systems; 2) designing, constructing and/or maintaining a facility in such a manner that allowed flood waters to enter the structure, thus endangering the safety of patients; and 3) failing to implement an adequate evacuation plan. The Louisiana Supreme Court found that the plaintiffs' claims against the hospital did not fall within the purview of the LMMA. When

considering the first *Coleman* factor, the Louisiana Supreme Court found that the plaintiffs' claims were not treatment-related or caused by dereliction of professional medical skill. *Id.* at 526. The Court pointed out that the petition did not allege that the decedent's death was related to medicine, medical care, or medical treatment. It further provided that the "language of the allegations, 'designing,' 'constructing,' 'maintaining,' and 'failing to implement' all suggest premises liability and general negligence rather than a dereliction of professional medical skill." *Lacoste*, 966 So.2d at 526.

In the present case, similar to *Lacoste*, Mr. Tucker did not allege in his petition that his injuries were related to medicine, medical care, or medical treatment. The allegations refer to a "hazardous," "dangerous," and "defective" condition of the premises, and the failure to "warn Petitioner of the hazardous condition," "discover and protect the Petitioner against the dangerous condition," and "maintain an adequate staff of properly trained personnel." This language suggests general negligence or premises liability, rather than the dereliction of professional medical skill.

The jurisprudence reflects several situations in which the claims of patients were found not to be treatment-related. For instance, in *Williamson*, 888 So.2d at 784-787, the Louisiana Supreme Court considered whether the failure of a health care provider to properly maintain a wheelchair, which lost a wheel causing injury to a patient, was subject to the provisions of the LMMA. The Court held that these acts were not treatment-related, because the claims that "the hospital negligently failed to repair the wheelchair and placed it back into service without verifying that it was properly repaired" were neither related to, nor did they involve, actual "treatment" of the patient. *Id.* at 789-90.

In *Blevins v. Hamilton Medical Center, Inc.*, 07-0217 (La. 6/29/07), 959 So.2d 440, the Louisiana Supreme Court considered whether the failure of a health

care provider to properly maintain a hospital bed, which rolled while the patient was attempting to use the bathroom, resulting in a knee injury, fell within the LMMA. The Court found that the alleged acts were not treatment-related and were not covered by the LMMA. *Id.* at 446-448.

In *Blazio v. Ochsner Clinic Foundation*, 19-753 (La. App. 4 Cir 3/4/20), 294 So.3d 36, 43, *writ denied*, 20-732 (La. 10/6/20), 302 So.3d 530, the Fourth Circuit found that a plaintiff's negligence claim against a hospital for placing a lock on the bathroom door of his/her hospital room, without a way to enter the bathroom timely in an emergency situation, was not treatment-related. The Court found that the plaintiff's claim related to the deficient design of the hospital and lack of emergency procedure, which did not involve medical treatment and was not related to the dereliction of medical skill. The Court concluded that the plaintiff's claims were not subject to the LMMA. *Id.*

In support of its decision to sustain Seaside's exception of prematurity, the trial court referred to the Fourth Circuit's decision in *Prisk v. Palazzo*, 95-1475 (La. App. 4 Cir. 1/19/96), 668 So.2d 415, *writ denied*, 96-437 (La. 4/8/96), 671 So.2d 335. However, we do not find the holding in *Prisk* to be persuasive here. In *Prisk*, 668 So.2d at 416, the plaintiff filed suit against a doctor and a hospital, alleging she was falsely imprisoned for eight days and that she "was caused to go to [the hospital] under false pretenses." The Fourth Circuit found that based on its review of certain provisions of the Louisiana Mental Health Law, La. R.S. 28:1, *et seq.*, confinement for purposes of treatment falls within the definition of health care. The Court stated that the plaintiff specifically alleged that she was falsely imprisoned in violation of the Louisiana Mental Health Law, which "contemplates confinement in a treatment facility as the initial step in the examination and treatment of persons suffering from substance abuse or mental illness" and "imposes special duties on physicians and hospitals before confining a patient for

treatment." The Court found that a breach of the statutory duties set forth in the Mental Health Law constitutes medical malpractice. *Id.* at 418.

In the present case, unlike *Prisk*, Mr. Tucker did not allege he was wrongfully confined to the hospital, that any mental health procedures were not followed, or that the Mental Health Law was violated.

The petition does not show that Mr. Tucker's allegations against Seaside and EJGH relate to medical treatment or the dereliction of professional medical skill. There is no indication of whether all of the windows in the hospital were maintained without locks or restraints or whether, instead, the window in this particular room was broken. Although defendants argue that the decision to hold Mr. Tucker in a room with no locks on the windows was negligent due to his psychiatric condition, there is nothing in the petition indicating that a medical professional made this decision or that it was based on a medical assessment. Further, with regard to the claim that Seaside and EJGH failed to maintain an adequate staff of properly trained personnel, the petition does not indicate whether the hospital administrators, a medical professional, or other hospital personnel was responsible for the staffing of the psychiatric unit. Finally, as discussed above, defendants introduced no evidence in support of their claim that Mr. Tucker's confinement in a room with no locks on its window was related to his evaluation and treatment.

Based on our review of the factual allegations in the petition, we find that the first *Coleman* factor weighs in favor of finding that the alleged actions of defendants were not treatment-related.

Next, we consider the second *Coleman* factor, which is whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached. Mr. Tucker contends that no medical professional has been named in this lawsuit or is alleged to have breached the standard of care, and a

medical professional would not be qualified to determine whether a hospital window was defective or presented an unsafe condition. Defendants respond that an expert is needed to determine the applicable standard of care for patients suffering from schizophrenia and bipolar disorder.

Mr. Tucker has not alleged that his injuries were caused by an act or omission of a doctor, nurse, or other medical professional. Based on the allegations of the petition, there has been no showing that expert medical testimony is necessary to determine whether Seaside or EJGH breached a particular duty owed to Mr. Tucker. Defendants introduced no evidence to the contrary.

The third *Coleman* factor considers whether the pertinent act or omission involved assessment of the patient's condition. Mr. Tucker argues that defendants' acts or omissions did not involve an assessment of his condition, because the design and maintenance of the hospital and its windows involved administrative decisions, not professional, medical decisions. Defendants respond that defendants' medical assessments of Mr. Tucker bear directly on what precautions they took, or failed to take, to prevent Mr. Tucker from escaping through the window.

In support of its decision to grant Seaside's exception of prematurity, the trial court also relied on this Court's decision in *W.P. v. Universal Health Services Foundation*, 11-801 (La. App. 5 Cir. 3/27/12), 91 So.3d 1097, *writ denied*, 12-960 (La. 6/15/12), 90 So.3d 1067. Defendants rely on this case as well. However, we find this case to be distinguishable. In *W.P.*, 91 So.3d at 1098, the plaintiffs filed suit against a hospital for negligence in failing to prevent two sexual assaults of their minor son after he was placed in a room with another psychiatric patient. This Court found that "a determination of a breach of the appropriate standard of care for assessment of psychiatric patients and making room assignments based on this assessment falls within the scope of the malpractice act." *Id.* at 1101. The

Court pointed out that placing a patient in a room with another patient with special medical needs related "to the particular medical assessment and condition of each of the patients, and are therefore related to the treatment of the patients within the meaning of the medical malpractice act." *Id.*

Unlike *W.P.*, in the present case, the allegations of the petition do not indicate whether Seaside and EJGH's acts or omissions involved an assessment of Mr. Tucker's condition, and defendants introduced no evidence in support of their argument.

Based on our review of the petition, we find that this *Coleman* factor weighs in favor of finding that Mr. Tucker's claims sound in general negligence, not medical malpractice. The claims set forth in the petition do not suggest that an assessment of Mr. Tucker's condition had any bearing on the decision to hold him in a room with a window that did not lock or have any restraints.

The fourth *Coleman* factor considers whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. Mr. Tucker argues that issues regarding the hospital room window were design or maintenance issues, not issues involving a physician-patient relationship. Defendants respond that, because Mr. Tucker was under a mandatory psychiatric hold, the incident occurred in the context of the physician-patient relationship.

There is no allegation in the petition that any medical professional breached the standard of care in his treatment of Mr. Tucker. The allegations do not suggest that either the design or maintenance of the window, or the adequacy of properly trained staff in the psychiatric unit, were the result of any medical decision. The allegations of the petition do not support a finding that the incident occurred in the context of a physician-patient relationship or within the scope of activities a hospital is licensed to perform. Again, defendants introduced no evidence to the

contrary. Therefore, this factor also weighs in favor of finding that Mr. Tucker's claims do not sound in medical malpractice.

The fifth *Coleman* factor is whether the injury would have occurred if the patient had not sought treatment. As the Louisiana Supreme Court stated in *Lacoste*, 966 So.2d at 529, "[i]n a general sense, any wrong that a patient suffers in a hospital or doctor's office would not occur if the patient had not first entered the facility." The Court found that, given its finding that the wrongs alleged in the petition were not treatment-related or the result of a dereliction of professional skill, the possibility that the injury would not have occurred if the plaintiff had not sought treatment did not weigh greatly in favor of finding that the wrongful conduct alleged in the petition was medical malpractice within the confines of the LMMA.

Following the reasoning in *Lacoste*, we find that while the particular incident and injury may not have occurred if Mr. Tucker had not been treated by defendants, this does not weigh greatly in favor of finding that the wrongful conduct alleged was medical malpractice.

The final *Coleman* factor, whether the tort alleged was intentional, is not at issue in this case. Mr. Tucker has not alleged that Seaside or EJGH intentionally committed any wrongful act or omission.

After applying the LMMA's definition of malpractice and the *Coleman v. Deno* factors to the petition, we find that Mr. Tucker's claims, as alleged in the petition, do not arise from medical malpractice and are not subject to the provisions of the LMMA. Therefore, defendants are not entitled to a medical review panel.[2] Accordingly, we find that the trial court erred in sustaining

---

[2] Our decision is based solely on the allegations of the petition. In *Lacoste*, 966 So.2d at 529, n. 2, the Louisiana Supreme Court pointed out that the trier of fact would ultimately decide if the case involved medical malpractice or negligence, and it was only concerned with whether the factual allegations of the petition asserted claims within the purview of the LMMA. It further stated, "[t]hat a fact-finder with more evidence before it may ultimately conclude that the defendant's conduct was medical malpractice does not control our review of the instant exception of prematurity, which is, as we have explained,

defendants' exception of prematurity and dismissing plaintiff's claims against Seaside and EJGH.

## CONCLUSION

For the reasons stated above, we reverse the trial court's September 1, 2022 and November 28, 2022 judgments that sustained the exceptions of prematurity filed by Seaside and EJGH, and we remand to the trial court for further proceedings.

## REVERSED AND REMANDED

---

limited to the factual allegations in the amended pleadings." Likewise, in the present case, we acknowledge that a fact-finder with more evidence before it may ultimately find that defendant's conduct was medical malpractice. However, defendants did not meet their burden of proving, at this stage of the proceedings, that the allegations arise from medical malpractice.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 27, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-132

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
ADRIAN M. SIMM, JR. (APPELLANT)          LEWIS O. UNGLESBY (APPELLANT)          GUICE A. GIAMBRONE, III (APPELLEE)
IVANA DILLAS (APPELLEE)                  BRETT M. DUPUY (APPELLEE)

### MAILED

JAMIE F. GONTAREK (APPELLANT)        ASHLEY J. GREENHOUSE (APPELLANT)        JEAN-PAUL J. MORRELL (APPELLEE)
LANCE C. UNGLESBY (APPELLANT)        ATTORNEY AT LAW                         ATTORNEY AT LAW
ATTORNEYS AT LAW                     8211 GOODWOOD BOULEVARD                 909 POYDRAS STREET
607 ST. CHARLES AVENUE               SUITE E                                SUITE 1400
SUITE 300                            BATON ROUGE, LA 70806                   NEW ORLEANS, LA 70112
NEW ORLEANS, LA 70130